In the Matter of Robert Scott **FISHER**.

No. 07SA383.

Supreme Court of Colorado.

Feb. 9, 2009.

Rehearing Denied March 2, 2009.

John S. Gleason, Regulation Counsel, Charles E. Mortimer, Jr., Assistant Regulation Counsel, Denver, Colorado, Attorney for the People.

Robert Scott Fisher, Colorado Springs, Colorado, Pro se.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

In this attorney discipline case, both Attorney Regulation Counsel and lawyer Robert Scott Fisher appeal the decision of the Hearing Board. In 2005, Fisher was charged with violating numerous Rules of Professional Conduct[1] relating to his representation of Shirley Varner in a dissolution of marriage case. In addition to obtaining a dissolution of marriage order from the trial court, one of Ms. Varner's primary objectives in the case was securing survivor benefits and a portion of her husband's benefits in a federal pension. Fisher did little aimed at securing Ms. Varner rights in the pension. During the course of the representation, Fisher became concerned Ms. Varner would not pay the fees she owed him. Therefore, in order to secure his fees, Fisher obtained a promissory note secured by a deed of trust in Mr. and Ms. Varner's marital residence. After obtaining the deed of trust, Fisher did not amend a financial affidavit filed by Ms. Varner to show his interest in the residence. Pursuant to a trial court order, the residence was sold, and Fisher's promissory note was paid with a portion of the sale proceeds.

Attorney Regulation Counsel charged Fisher with violating Colo. RPC 1.1 (2007), failure to provide competent representation, and Colo. RPC 1.3 (2007), neglect of a legal matter, for his failure to take action aimed at securing Ms. Varner's rights in the pension. Fisher was also charged with violating Rules 1.7(b)(2007), representation limited by a lawyer's own interests, 1.8(a) (2007), obtaining an interest adverse to a client's without consent or independent counsel, and 1.8(j) (2007), obtaining a proprietary interest in the subject matter of the litigation, for taking the deed of trust in the Varner residence. Finally, Regulation Counsel charged Fisher with violating Rules 3.3(a) (2007), making a false statement of material fact to a tribunal, 3.4(c) (2007), knowingly disobeying an obligation under the rules of a tribunal, and 8.4(c) (2007), conduct involving dishonesty, fraud, deceit, or misrepresentation, for his failure to amend the financial affidavit to disclose his interest in the Varner residence.

The Hearing Board determined Fisher violated the Rules of Professional Conduct by failing to provide competent representation, neglecting a legal matter, obtaining a proprietary interest in the subject matter of the representation, and obtaining an interest adverse to his client's without securing consent or advising the client to seek independent counsel. However, the Hearing Board did not find clear and convincing evidence that Fisher's representation of Ms. Varner was limited by his own interests, that Fisher made a false statement of material fact to the trial court, that Fisher knowingly disobeyed an obligation under the rules of the trial court, or engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. On appeal, Fisher disputes the findings of the Hearing Board and argues he did not violate any Rules of Professional Conduct. Regulation Counsel argues the Hearing Board erred when it did not find clear and convincing evidence Fisher violated all Rules he was charged with violating.

## II. Facts and Proceedings Below

Fisher is a sole practitioner from Colorado Springs who specializes in family law. In

---

1. The Colorado Rules of Professional Conduct underwent substantial revision in 2008. All references in this opinion to the Colorado Rules of Professional Conduct refer to the Rules as they existed in 2007.

June of 2003, Shirley Varner retained Fisher to represent her in a dissolution of marriage case. At the time Ms. Varner retained Fisher, the case was already set for a permanent orders hearing. Ms. Varner and Fisher entered into a written fee agreement where Ms. Varner initially paid Fisher a retainer of $2,000. The contract authorized Fisher to charge a $350 collection fee. Ms. Varner informed Fisher that her primary objectives in the dissolution of marriage case were obtaining survivor benefits and a portion of the benefits being paid to her husband from her husband's federal retirement plan through the Office of Personnel Management ("OPM"), and dividing the equity in the marital residence. Ms. Varner suffered from depression, diabetes, a recent back surgery, and emotional distress as a result of her son's recent suicide.

Prior to retaining Fisher, Ms. Varner asked him if he had ever processed an OPM claim and he assured her he knew how to secure OPM benefits. Obtaining OPM benefits is a complex process governed by a number of rules and regulations a beneficiary must follow before the office will alter the named beneficiary of a pension plan. State court orders, such as those issued in dissolution of marriage cases, may be recognized by the OPM depending upon the language of the order and compliance with the OPM's regulations in processing the order. Fisher had never processed an OPM claim and was unaware of the procedures the federal government required to change beneficiaries.

Shortly before the final orders hearing, Ms. Varner met with Fisher and discussed the status of her bill. She owed Fisher $3,102 for services rendered. Fisher presented Ms. Varner with a promissory note in the amount of $3,102 secured by a deed of trust in the marital residence. Fisher asked Ms. Varner to sign the documents, explaining they were necessary to ensure payment of his fees. However, he informed Ms. Varner that courts often order husbands to pay the wives' attorney's fees in dissolution of marriage cases. The terms of the deed of trust and promissory note did not allow Fisher to foreclose on the property, and he could only collect the outstanding amount if the residence was sold or refinanced. At no point did Fisher advise Ms. Varner to seek independent counsel, nor did he give her an opportunity to do so. He also failed to secure her written consent to the conflict of interest.

Ms. Varner testified that she signed the documents with reservation, and was concerned the encumbrance on the deed might make it more difficult to sell the home in the future. She also stated she understood that $3,102 represented all funds needed to cover Fisher's work, including additional work Fisher needed to complete in order to secure her benefits with the OPM.

At the November 12, 2003 permanent orders hearing, the court ordered that Ms. Varner receive half of her husband's OPM benefits during his lifetime and survivor benefits should he predecease her. The court also ordered the sale of the marital residence with the proceeds to be divided equally between Mr. and Ms. Varner. The court retained jurisdiction over the case, and ordered each party to pay their own attorney's fees.

Fisher provided the court with a draft of the final orders which the court issued in January 2004. Fisher did not consult OPM rules and regulations when drafting the order. Additionally, he did not advise the court or opposing counsel of his interest in the marital residence or supplement Ms. Varner's financial affidavit to reflect his interest in the property. However, Fisher did provide the court with a document showing the equity Mr. and Ms. Varner had in the marital residence, an estimate of costs associated with sale, and encumbrances on the property. The document did not disclose Fisher's interest in the property.

Following permanent orders, Mr. Varner voluntarily paid Ms. Varner one half of his OPM benefits by writing her a check from his bank account after the OPM paid him the full amount. Ms. Varner testified she did not feel comfortable with Mr. Varner providing the funds directly to her and reiterated her concern to Fisher about securing her interest in Mr. Varner's OPM benefits. She provided Fisher with the OPM telephone number and requested he call them. Fisher failed to do so.

The court appointed a real estate agent suggested by Fisher to market and sell the Varner residence. By March 5, 2004, a contract was in place for the sale of the home at full asking price. However, on or around March 29, 2004, Ms. Varner contacted Fisher and requested he stop all work on her behalf. Ms. Varner stated she had become distrustful of Fisher and feared his only purpose in continuing to call her was to charge her additional fees for the calls and proposed office visits. She also felt he already had enough information from her to secure the OPM benefits.

On May 5, 2004, Mr. Varner's attorney and Fisher consulted and agreed that Mr. Varner's attorney should file a motion requesting the court appoint Fisher to sign documents for Ms. Varner at the closing of the sale of the marital residence. The motion alleged Ms. Varner failed to cooperate in the sale of the marital residence. Fisher did not inform Ms. Varner about this pleading. On May 4, Ms. Varner sent Fisher a certified letter informing him she would attend the closing. Shortly thereafter, Ms. Varner went to the courthouse to determine whether Fisher had taken any further action on the case and discovered the order authorizing him to sign the closing documents.

Fisher and Mr. Varner's attorney also co-authored a letter on Fisher's letterhead to the title company handling the closing informing it all proceeds from the sale of the Varner residence should be directed to Fisher. In the letter Fisher represented he was acting as Ms. Varner's attorney, even though Ms. Varner had terminated the professional relationship a week earlier. The title company declined to pay all proceeds to Fisher, insisting Ms. Varner agree to the payment arrangement and sign all documents.

On May 6, 2004, Fisher filed a notice of attorney's lien in the El Paso County District Court in the amount of $6,640.97, representing fees owed to him by Ms. Varner. The notice of lien also asserted a claim to Ms. Varner's share of the proceeds from the sale of the marital residence.

Both Fisher and Ms. Varner attended the real estate closing. The title company paid Fisher's promissory note, plus interest, from the proceeds of the sale and Fisher released the deed of trust. The remainder of the sale proceeds were paid to Fisher in trust based upon his attorney's lien. The following month, June 2004, Fisher filed a motion to enforce his attorney's lien in the amount of $3,581.63. The judge signed the order and authorized this amount to be paid from the $4,095 remaining in Fisher's trust account from the sale of the Varner residence. In July 2004, Fisher informed Ms. Varner he was keeping an additional $350 which he incurred in collecting his fees. This amount was not included in the $3,581.63 the court authorized Fisher to receive from the trust account.

During this time period, Fisher made numerous efforts, both via telephone and written mail, to contact Ms. Varner. Ms. Varner did not respond to Fisher's letters and messages fearing additional charges. After collecting the court ordered $3,581.63 and the $350 collection fee, Fisher filed a notice in July 2004 to withdraw as Ms. Varner's attorney. By this time, Fisher had made no efforts to secure survivor benefits or a portion of Mr. Varner's pension from the OPM. Mr. Varner continued to pay half of his OPM benefits to Ms. Varner after OPM distributed the full amount to him.

On April 22, 2005, Mr. Varner died suddenly as a result of a heart attack. Because Ms. Varner received the OPM payments directly from Mr. Varner, after Mr. Varner's death, Ms. Varner stopped receiving the payments. After his death, Ms. Varner personally filed a claim with the OPM based on the permanent order decree to receive survivor benefits. This claim was denied, as was her appeal of that decision. Ms. Varner received no benefits between May 2005 and December 2005 when the OPM officially recognized her claim to Mr. Varner's survivor benefits. The Hearing Board found there was insufficient evidence to determine why the OPM changed course and recognized Ms. Varner's claim.

On June 6, 2006, Attorney Regulation Counsel filed a complaint against Fisher alleging violation of Colo. RPC 1.8(a) (acquiring an interest adverse to client's without consent) for his failure to advise Ms. Varner

to seek independent counsel when he presented her with the promissory note and deed of trust; Colo. RPC 1.8(j) (proprietary interest in the subject matter of the representation), for taking the deed of trust in the residence; Colo. RPC 1.7(b) (representation limited by the attorney's own interests), for his actions during the sale of the residence; Colo. RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal) for paying himself an amount more than the court ordered; and Colo. RPC 1.1 (failure to provide competent representation) and Colo. RPC 1.3 (neglect of a legal matter) for allegedly failing to diligently and competently represent his client with regard to securing interests in the pension benefits.

The following December, Regulation Counsel filed a second complaint, which the court consolidated with the June 2006 complaint. The new complaint alleged violation of Colo. RPC 3.3(a) (false statement of material fact to a tribunal), Colo. RPC 3.4(c) (disobeying an obligation under the rules of a tribunal), and Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) for Fisher's failure to amend Ms. Varner's financial affidavit to include his interest in the marital residence and providing documentation regarding the Varner's equity in the residence which did not include Fisher's deed of trust.

In April 2007, the Presiding Disciplinary Judge granted Regulation Counsel's motion for summary judgment, finding violations of the Rules prohibiting an attorney from taking an interest adverse to a client's without consent and from taking a proprietary interest in the subject matter of the representation. The Board denied numerous motions for summary judgment filed by Fisher. On July 24–27, 2007, the Board conducted a hearing pursuant to C.R.C.P. 251.18 and, on October 30, 2007, issued an opinion and order imposing sanctions. In addition to those violations found on summary judgment, the Hearing Board found Fisher violated the Rules requiring competent representation and prohibiting neglect of a legal matter. The Hearing Board dismissed the remaining claims. As discipline, Fisher was suspended for six months, stayed upon successful completion of a two-year period of probation and the Office of Attorney Regulation's Ethics School.

Fisher appeals the Hearing Board's determination that he violated the Rules requiring competent representation, prohibiting neglect of a legal matter, prohibiting an attorney from taking an interest adverse to the client's without consent, and prohibiting the attorney from acquiring a proprietary interest in the subject matter of the litigation. Fisher additionally argues the Hearing Board lost jurisdiction over the matter because it issued its ruling more than 60 days after the hearing, Regulation Counsel violated his due process rights by failing to disclose possibly exculpatory evidence, and Regulation Counsel's cross-appeal violates the constitutional prohibition against double jeopardy.

Regulation Counsel appeals the Hearing Board's determination there was not clear and convincing evidence Fisher violated the Rules prohibiting false statements of material fact to a tribunal, prohibiting an attorney from knowingly disobeying an obligation under the rules of a tribunal, prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and requiring representation not be limited by an attorney's own interests. Regulation Counsel also argues the discipline imposed by the Board was unreasonable and insufficient in relation to the needs of the public.

### III. Fisher's Appeal

#### A. Standard of Review

 In disciplinary proceedings, the Hearing Board is the finder of fact and has the authority to make determinations regarding the credibility of witnesses and conflicts in evidence. *In re Haines,* 177 P.3d 1239, 1244 (Colo.2008). While this court has plenary authority over matters of attorney discipline, we have established standards of review and will disturb the Hearing Board's factual findings only if they are clearly erroneous or not supported by substantial evidence in the record. *Id.;* C.R.C.P. 251.27(b). We conduct a de novo review of the Hearing

Board's conclusions of law. *Haines,* 177 P.3d at 1245.

## B. Colo. RPC 1.1

■ The Hearing Board found clear and convincing evidence that Fisher violated Colo. RPC 1.1, failure to provide competent representation, when he did not research the process necessary to secure Ms. Varner's rights in Mr. Varner's OPM benefits or take any steps toward securing those rights. Fisher argues this determination must be reversed because it was not supported by clear and convincing evidence. We disagree.

Colo. RPC 1.1 states "a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The comments provide that, when determining the level of knowledge and skill a particular matter requires, the Board should look to factors including the complexity and specialized nature of the matter, the lawyer's general experience, and the lawyer's training and experience in the field in question. Colo. RPC 1.1 cmt. "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem and use of methods and procedures meeting the standards of competent practitioners." *Id.* While an attorney should generally not accept employment in an area of law in which she is not qualified, she may accept such employment if she in good faith expects to become qualified through study and investigation. *Id.*

The Hearing Board acknowledged Ms. Varner terminated the professional relationship with Fisher shortly after the permanent orders hearing and did not respond to telephone calls or written communications. However, it found that if Fisher had taken any steps to become acquainted with the procedures for securing retirement benefits through the OPM by the time the relationship was terminated, he could have, at a minimum, informed Ms. Varner of the potential injury she might suffer if she did not allow him to continue working to secure the benefits.

The record supports the finding of the Hearing Board. Fisher had never handled a case involving a federal pension before. During the nine months between the time he was retained by Ms. Varner and his termination, Fisher never contacted the OPM, did not review the attorney's handbook published by the OPM, did not consult the OPM website, and did not consult with experts in the field of federal benefits. After the trial court issued the decree providing Ms. Varner should receive benefits from Mr. Varner's OPM account, Fisher failed to mail the decree to the OPM or instruct another party to do so.

Thomas Hefly, an expert witness in the area of division and transfer of retirement benefits upon dissolution of marriage, testified division of retirement benefits is a specialized practice that domestic relations attorneys often refer to specialists. He stated the OPM publishes a handbook and website to provide information to attorneys on the proper handling of federal pensions. Mr. Hefly testified that it is not enough for an attorney simply to obtain a decree awarding benefits to the spouse, the attorney must provide the OPM with the order.

Therefore, evidence in the record supports the Hearing Board's finding that Fisher did not provide competent representation to Ms. Varner because he failed to take action which would have aided him in securing the survivor benefits. Accordingly, the Hearing Board's finding was not clearly erroneous, and we affirm the Board on this ground.

## C. Colo. RPC 1.3

■ Fisher argues the Hearing Board's determination that he neglected a legal matter in violation of Colo. RPC 1.3 must be reversed because it is not supported by clear and convincing evidence. The Hearing Board found Fisher violated this rule because he did not take any steps to secure the OPM benefits-one of Ms. Varner's primary objectives for the representation. Fisher argues he could not have neglected the matter because Ms. Varner ultimately received the benefits. We disagree with Fisher's conclusory reasoning.

Colo. RPC 1.3 requires a "lawyer to act with reasonable diligence and promptness in representing a client. A lawyer shall not neglect a legal matter entrusted to that lawyer." Lawyers retained on particular matters should pursue those matters "on behalf of a client despite opposition, obstruction[,] or personal inconvenience to the lawyer." Colo. RPC 1.3 cmt. Unless the professional relationship is terminated by the client, "a lawyer should carry through to conclusion all matters undertaken for a client." *Id.*

Fisher's argument that he could not have neglected the matter because Ms. Varner ultimately received the benefits is unpersuasive. The Hearing Board found that, while Fisher won a judgment from the trial court in the dissolution of marriage action awarding Ms. Varner these benefits, Fisher "did not take the next steps necessary to secure them." The Board considered Ms. Varner's unwillingness to return telephone calls or meet with Fisher following the permanent orders hearing. However, the Board determined that, while Ms. Varner's actions made it difficult for Fisher to communicate with her, they did not ameliorate his duty not to neglect legal matters entrusted to him.

The fact that Ms. Varner ultimately received the benefits to which she was entitled does not mean that Fisher promptly and diligently performed his duties. In fact, the record supports the Board's conclusion that, during the time Fisher represented Ms. Varner, he did not act with promptness or diligence in securing the OPM benefits. In the three months between the trial court's order that Ms. Varner receive one half of Mr. Varner's OPM benefits and Fisher's termination, Fisher took no steps to secure the benefits in Ms. Varner's name. After obtaining the decree from the trial court, Fisher did not mail the order to the OPM or consult with Ms. Varner regarding the need to submit an order to the OPM for processing. Nor did he consult with opposing counsel regarding the division of the survivor benefits or request that opposing counsel make

arrangements with the OPM for the benefit division.

Therefore, it was not clearly erroneous for the Hearing Board to find that Fisher failed to take prompt measures to secure Ms. Varner's rights in Mr. Varner's OPM. Accordingly, we affirm the Board's finding Fisher neglected a legal matter.

### D. Colo. RPC 1.8(a)

■ On summary judgment, the Presiding Disciplinary Judge ("PDJ") found Fisher obtained an interest adverse to his client's without complying with the requirements of Rule 1.8(a) when he took the deed of trust in the Varner residence. Fisher argues this determination was legal error which we should review de novo. However, we view this as a challenge to the PDJ's factual finding, and will reverse only if the decision was clearly erroneous.

> Colo. RPC 1.8(a) provides that an attorney shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and writing to the client in a manner reasonably understood by the client;
>
> (2) the client is informed that use of counsel may be advisable and is given a opportunity to seek the advice of such counsel in the transaction; and
>
> (3) the client consents in writing thereto.

Therefore, an attorney may obtain an interest adverse to a client's, but the transaction must be fair to the client, the client must be advised of the desirability of obtaining independent counsel and given the opportunity to do so, and must consent to the transaction in writing.[2]

Fisher argues it was not improper to take the deed of trust because it was not "adverse" to Ms. Varner's interests. He states there was no adversity because he and Ms.

---

2. The 2008 revision of Rule 1.8(a) adds the additional requirements that the client be advised of the desirability of obtaining independent counsel in writing and, if the client gives written consent, the writing must contain the essential terms of the transaction and the lawyer's role in the transaction.

Varner's objectives regarding the residence were aligned and his interest did not negatively impact Ms. Varner. He therefore asserts the Rule requiring consent and independent counsel when an attorney and a client's interests are adverse is inapplicable. We disagree.

In a Formal Ethics Opinion, the American Bar Association ("ABA") takes the position it is not per se improper for an attorney to secure a fee through taking a security interest; however, when doing so, the attorney must abide by the mandates of Rule 1.8(a). ABA Formal Opinion 02–427. A similar Colorado Bar Association Ethics Opinion states if a lawyer takes a security interest in a client's property for payment of fees, he must comply with Colo. RPC 1.8(a). CBA Ethics Opinion 110: Assertion of Attorney's Charging Lien/Security Interest in Property, Mod. May 19, 2001. A deed of trust is a security interest. *Herstam v. Bd. of Dir. Silvercreek Water and Sanitation Dist.*, 895 P.2d 1131, 1138 (Colo.App.1995); § 38–35–117, C.R.S. (2008) ("Mortgages, deeds of trust, or other instruments intended to secure the payment of an obligation shall be deemed a lien.").

*Black's Law Dictionary* defines "adverse" as "against or opposed to," and having a "contrary interest, concern, or position." *Black's Law Dictionary* 252 (8th ed. 2004). Here, Fisher entered into a prohibited transaction with Ms. Varner when he acquired an ownership interest in the residence. In the context of Rule 1.8(a), an attorney and a client's interests are adverse if their pecuniary interests are opposed to one another. The simple fact that a client and an attorney's interests are opposed establishes adversity for purposes of Rule 1.8(a). It is therefore not necessary to inquire into whether that adversity negatively impacts the client because the protective measures

outlined by Rule 1.8(a) must be followed any time a lawyer's pecuniary interest are opposed to the client's.[3]

Accordingly, in the context of Rule 1.8(a), Fisher's argument that there was no adversity between himself and Ms. Varner is flawed. Here, by acquiring the promissory note and deed of trust, Fisher streamlined his ability to collect his fees and reduced the amount of equity Ms. Varner had in the property. Therefore, Fisher's pecuniary interest in the residence was opposed to Ms. Varner's, and their interests were adverse. It is of no consequence that Ms. Varner was not ultimately negatively impacted because of this adversity.

Because Fisher entered into a business transaction with Ms. Varner in which their pecuniary interests were adverse, he should have complied with Rule 1.8(a)'s independent counsel and consent requirements. Therefore, the Hearing Board's determination that Fisher violated Rule 1.8(a) is not clearly erroneous, and we affirm the Board.

### E. Colo. RPC 1.8(j)

■ On summary judgment, the PDJ also determined Fisher violated Colo. RPC 1.8(j),[4] which prohibits attorneys from obtaining proprietary interests in the subject matter of the representation, when he took the deed of trust in the Varner residence. Fisher argues this finding was legal error; we view this claim as a challenge to the sufficiency of the evidence to support the PDJ's conclusion, and we will reverse only if we find the decision was clearly erroneous.

Colo. RPC 1.8(j) disallows a lawyer from acquiring "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." However, the lawyer may acquire a "lien granted by

3. In contrast to Rule 1.8(a), Rule 1.7(b) prohibits a lawyer from representing a client if the representation may be materially limited by the lawyer's responsibilities to third parties or by the lawyer's own interests unless, among other things, the lawyer believes the representation will not be adversely affected. In contrast to Rule 1.8(a), the adversity inquiry for Rule 1.7(b) focuses on the effect the adversity will have on the attorney's representation of the client, not merely

on the fact that adversity exists. Thus, even though an attorney's own interest in a matter may be adverse to a client's, he does not violate Rule 1.7(b) unless he reasonably believes the adversity will negatively affect his representation of the client.

4. In 2008, Rule (j) was amended and now appears as 1.8(i).

law" to secure the lawyer's fees and contract with a client for a reasonable contingent fee in a civil case. *Id.* In amended Rule 1.8(j), now appearing as Rule 1.8(i), the language was changed to allow a lawyer to acquire a lien "authorized by law." We view this change in language as not affecting the substance of the rule.

Fisher argues he did not violate the rule prohibiting attorneys from acquiring proprietary interests in the subject matter of the representation because a deed of trust is a "lien granted by law to secure a lawyer's fees." He states the 2008 revision to Rule 1.8(j) makes clear that deeds of trust are not prohibited under this rule. However, Fisher is again mistaken.

The exception for "liens granted by law" refers to an attorney's retaining or charging lien, authorized by sections 12–5–119, –120, C.R.S. (2008). *See People v. Smith,* 830 P.2d 1003, 1005 (Colo.1992). Fisher argues the deed of trust qualifies as a "lien granted by law" because it operated in the same manner as an attorney's charging lien, and the revised rule includes deeds of trust in the exception.

 Attorney's charging liens are statutory creations under which attorneys have liens on money, property, claims, or judgments they have obtained or assisted in obtaining. § 12–5–119. The lien begins to accrue from the moment of commencement of services. *In re Marriage of Berkland,* 762 P.2d 779 (Colo.App.1988). An attorney's charging lien places third parties on notice that the attorney has an interest in the funds subject to the lien. *Id.* In order to collect under the lien, the attorney must reduce it to a judgment.

The comments to the revised version of the rule state "the law of each jurisdiction" determines which "liens authorized by law" are excepted from the rule's prohibition on attorneys acquiring proprietary interests in the subject matter of the representation. Colo. RPC 1.8 cmt. The comment suggests "these may include liens granted by statute, liens originating in common law, and liens acquired by contract with the client." *Id.* Fisher argues that, because the comments specifically allow liens originating in common law

and those acquired by contract, his deed of trust was proper. However, the comments state the law of each jurisdiction determines what liens are excepted from the rule. In Colorado, attorney's charging liens are the only "liens authorized by law," and as such, they are the only liens excepted from the prohibition against attorneys obtaining proprietary interests in the subject matter of the litigation.

In contrast to attorney's charging liens, the promissory note and deed of trust were not authorized by law. While attorney's charging liens arise by operation of law, promissory notes and deeds of trust do not— they arise when granted by an individual. The deed of trust allowed Fisher to collect on his promissory note immediately without reducing his claim to a judgment. While attorney's charging liens roughly accomplish the same purpose Fisher pursued when he had Ms. Varner sign the deed of trust—security for the payment of fees—Fisher cannot merely substitute one for the other.

Attorney's charging liens are specifically provided for by statute and are excepted from the prohibition on attorneys obtaining proprietary interests in the subject matter of the representation. Deeds of trust are not. Therefore, when Fisher secured the promissory note with the deed of trust in the Varner residence he acquired a proprietary interest in the subject matter of the litigation in violation of the Rules of Professional Conduct. Accordingly, we affirm the PDJ because the determination Fisher violated Rule 1.8(j) was not clearly erroneous.

### F. Requirements of 1.8(a) and (j) unknown to Fisher

Fisher argues that even if his actions violated Rules 1.8(a) and (j), he cannot now be punished because he did not know the conduct was wrong at the time it was committed. This argument presents a legal question, and we therefore apply a de novo standard of review.

As discussed above, there is ample legal authority in Colorado establishing that attorneys must abide by Rules 1.8(a) and (j) when taking a security interest in the subject mat-

ter of representation. In Colorado, the only "liens granted by law"[5] excepted from the prohibition on lawyers acquiring proprietary interests in the subject matter of the representation are attorney's liens. Accordingly, Rule 1.8(j) applies to deeds of trust, and Fisher violated it when he took the deed of trust in the Varner residence. Similarly, when an attorney takes a security interest in his client's property, this is a business transaction and he must comply with the consent and independent counsel requirements of Rule 1.8(a).

■ All Colorado attorneys are presumed to be aware of the Rules of Professional Conduct and their impact. *See In re Attorney C.*, 47 P.3d 1167, 1173 (Colo.2002). An attorney's "awareness that his conduct will violate an ethical proscription is not itself material." *In re Attorney D.*, 57 P.3d 395, 400 (Colo.2002). Therefore, Fisher's conduct warrants punishment whether or not he knew the conduct was improper. Accordingly, we decline to set aside the PDJ's determination that Fisher violated Colo. RPC 1.8(a) and (j).

### G. Timeframe for Issuance of Opinion

Fisher argues the Hearing Board lost jurisdiction over the matter because it issued the Opinion and Order Imposing Sanctions 96 days after the hearing. This is a matter of law which we review de novo.

■ C.R.C.P. 251.19 provides that "within sixty days after the hearing" the Hearing Board "shall prepare an order setting forth its findings of facts and its decision." However, nothing in this rule, or any other rule, states the Hearing Board loses jurisdiction to rule on a matter if the opinion is not issued within sixty days after the hearing. In light of C.R.C.P. 1(a), which states the Rules of Civil Procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every action," we hold the failure to issue a decision within 60 days does not result in the Hearing Board losing jurisdiction over the matter.

■ We do not suggest there should never be consequences for the Hearing Board's failure to issue a timely decision, however we find the 60 day time period to be largely aspirational. In determining whether consequences should result if the Board fails to render a timely decision, we will consider the extent of the delay, the reasons for the delay, and any prejudice that occurred as a result of the delay.

Here, while the decision was issued 96 days after the hearing, Fisher can point to no prejudice that occurred as a result of the delay. The Hearing Board did not state the reasons for the delay, but we note this was a case involving numerous charges and a significant amount of evidence. Because Fisher was not prejudiced in any way, and Fisher's proposed remedy of remanding the case and trying the matter anew would merely prolong the case at significant cost for all parties, we decline to impose any consequences for the Board's failure to issue the opinion within 60 days. Accordingly, we find no action is required for this minor violation of the 60 day requirement; however, the Hearing Board shall make every attempt to comply with this timeframe in the future.

### H. Due Process

■ Fisher argues it was error for the Hearing Board to deny his motion for a new trial based on Regulation Counsel's failure to disclose their expert's assessment of the case. Regulation Counsel consulted with an expert in the field of OPM benefits when preparing for the hearing. Fisher argues this consultation resulted in Regulation Counsel's expert opining that Fisher did not violate the rules requiring competent representation and prohibiting neglect of a legal matter. Fisher asserts this is exculpatory evidence which must be disclosed to him because attorney discipline proceedings are "of a quasi-criminal nature." *See In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Fisher argues because of the "quasi-criminal nature" of discipline proceedings, due process protections afforded to criminal defendants must be provided

---

**5.** Or, under the 2008 revision, "liens authorized by law."

to attorneys in discipline proceedings. We review this claim de novo.

The simple fact that attorney discipline proceedings are quasi-criminal in nature does not mean the full panoply of criminal protections apply, or that the Rules of Criminal Procedure should govern disciplinary proceedings. On the contrary, disciplinary proceedings are conducted pursuant to the Colorado Rules of Civil Procedure. C.R.C.P. 251.18(d). In contrast to criminal matters, the Rules of Civil Procedure allow litigants to work with consulting experts without disclosing the identity or opinions of that expert if she is not called as a witness. *Phillips v. Dist. Court,* 194 Colo. 455, 573 P.2d 553 (1978); C.R.C.P. 26(b)(4)(B) (stating a party may "discover facts known or opinions held" by an expert retained by opposing counsel "who is not expected to be called as a witness at trial only as provided by C.R.C.P. 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means").

Here, Regulation Counsel's expert did not testify, and there is no indication his opinions were used in any way. Accordingly, in this instance, the Rules of Civil Procedure adequately protect Fisher's due process rights.

## I. Double Jeopardy

■ In a similar vein as the due process argument, Fisher argues Regulation Counsel's appeal of the Hearing Board's findings that Fisher did not violate Colo. RPC 1.7(b), 3.3(a), 3.4(c), and 8.4(c) violates the constitutional prohibition against double jeopardy. We review this matter de novo.

We reject Fisher's argument that double jeopardy applies to regulatory discipline. In fact, this court has specifically held double jeopardy concepts do not apply to attorney discipline proceedings. *People v. Marmon,* 903 P.2d 651, 654–55 (Colo.1995). However, while appeals by Regulation Counsel of Hearing Board determinations that an attorney did not violate the Rules of Professional conduct do not contravene constitutional rights, they are not advisable in light of the very difficult standard of review we apply to

such appeals. *See In the Matter of Rosen,* 198 P.3d 116, 119 (Colo.2008).

## IV. Regulation Counsel's Appeal

### A. Standard of Review

■ While we recognize we have plenary power over attorney disciplinary matters, we have nonetheless established standards of review which we apply when reviewing decisions of the Hearing Board. The standard of review for decisions of the Hearing Board finding no violation of a rule differs subtly from the standard of review for findings of a violation because of the nature of the Board's decision. When the Hearing Board determines a violation occurred, it applies a clear and convincing evidence standard. Because this is a finding of fact, we will disturb this finding only if it was clearly erroneous or not supported by substantial evidence in the record. *In re Haines,* 177 P.3d at 1244. However, if the Hearing Board does not find a violation, the clearly erroneous standard for factual findings is not applicable. *Rosen,* 198 P.3d at 119. When the Board returns a finding of no violation, it does not make a factual finding that we can review; we have described the determination of no violation as the absence of a factual finding. *Id.* A determination that no violation occurred is a finding that the evidence is insufficient to convince the Board of a violation by a standard of clear and convincing evidence. We do not suggest that there will always be a particular piece of evidence the absence of which the Board can point to in order to demonstrate insufficient evidence. Rather, the insufficiency may be a general shortcoming in the persuasiveness of the evidence as a whole.

The advantage of having a trier of fact hear testimony is that she is able to evaluate the credibility of the witnesses, detect nuances in testimony, and determine the overall persuasiveness of the evidence. Therefore, a hearing officer may find it difficult to explain a failure to find a violation by the standard of clear and convincing evidence, particularly when it is based on a general uncertainty about the evidence as a whole. Further, the Hearing Board's three panel members may have been unconvinced for different reasons. Recognition that reasonable people may view

evidence differently is one of the reasons justifying the three-person panel.

■ Here, the Hearing Board did not make an extraordinary effort to explain what failed to convince them that Fisher violated Rules 1.7, 3.3, 3.4, and 8.4. While a clear explanation of the short-comings of the evidence would facilitate our review, we will not require the Board to make findings as to why it is unconvinced of a violation. To do so might require each member of the Board to attempt to explain possibly separate dissatisfaction with the degree to which the evidence is persuasive. In the absence of a detailed explanation of the shortcomings of the evidence, we may look to the possible reasons a Board might be unconvinced. If we can articulate a reason the Board could have been unconvinced of a violation, whether or not it represents the Board's actual reasoning, we will affirm because, based on this reason, we cannot say that no reasonable fact finder could be unconvinced of a violation by a standard of clear and convincing evidence. Accordingly, we affirm the Hearing Board if we find from review of our record that a reasonable person could find that any one of many possible views of the evidence does not meet the clear and convincing standard. Therefore, in the absence of legal error, we will only overturn the Hearing Board's failure to find a violation if no reasonable fact finder could be unconvinced of a violation by the standard of clear and convincing evidence. *Rosen*, 198 P.3d at 119.

Appeals from the Hearing Board's finding of no violation should be taken sparingly, as it is unusually difficult to show error. Rather than creatively explore the many possible reasons for the panel's decision, it is sufficient that we simply conclude the panel could reasonably reach such a conclusion. If we choose to discuss how the panel may have found the evidence less than convincing, we will affirm the Hearing Board if we conclude a reasonable explanation exists justifying the Board's finding of no violation. Further, we recognize that our discussion may not even reflect the panel's actual dissatisfaction with the evidence.

■ Therefore, we will overturn the Hearing Board's determination a violation did not occur only if we cannot find any reasonable explanation for the Board's determination, and conclude that no reasonable fact finder could be unconvinced of a violation by a standard of clear and convincing evidence.

### B. 1.7(b)

■ The Hearing Board determined Fisher did not violate the rule requiring representation not be limited by a lawyer's own interests as alleged in the first complaint. Regulation Counsel argues it was legal error for the Board to find no violation because, by representing Ms. Varner in the sale of the marital residence, Fisher also advanced his own claims against the proceeds of the sale. However, this is not a claim of legal error, and we will reverse the Hearing Board only if we find that no reasonable fact finder could be unconvinced of a violation of Rule 1.7(b) by clear and convincing evidence. *Id.*

Rule 1.7(b) states:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's . . . own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. . . .

Therefore, the rule requires a lawyer not represent a client if that representation may be materially limited by the attorney's own interests unless the attorney reasonably believes the representation will not be adversely affected and the client consents after consultation. The Hearing Board determined no conflict existed and Fisher therefore did not have to consult with Ms. Varner or obtain her consent. Regulation Counsel argues Fisher's deed of trust gave him a direct financial interest in the sale of the residence, and, as such, he was not in a position to explore alternatives to the sale of the residence or maximize Ms. Varner's return on the sale.

The comments to the rule state a lawyer's own interests should not be permitted "to have adverse affect on representation of a

client." Colo. RPC 1.7 cmt. In its comments to Model Rule 1.7, largely the same as Colo. RPC 1.7(b), the ABA states "the mere possibility of ... harm does not itself require disclosure and consent." Model Rule of Professional Conduct 1.7, cmt. 8. Rather, the ABA urges the focus for determining whether a conflict exists is "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* Therefore, the focus of a Rule 1.7(b) inquiry is on the effect the attorney's interest may have on the client.[6]

Here, the judge in the Varner's dissolution of marriage case previously ordered the marital residence sold, and ordered Ms. Varner pay her own attorney fees. The judge knew Ms. Varner's only asset, aside from the OPM benefits, was her equity in the marital residence. Two months after the judge ordered the home sold, there was a contract for sale on the house for the full asking price. From the record, it appears Fisher had no role in determining the asking price. There is no indication Fisher's interest in the marital residence affected the sale price, the speed of the sale, or the decision of the trial court to order the sale of the home.

The Hearing Board may have found that Fisher's interest would not negatively affect Ms. Varner. In fact, Ms. Varner and Fisher's interests were aligned with regard to the sale of the residence. The court ordered the sale, and, as Ms. Varner's attorney, Fisher was obliged to complete the sale. Both Fisher and Ms. Varner hoped to accomplish a swift sale of the property and, once an offer was tendered at the asking price, to complete the sale. Fisher sought this outcome in or-

der to ensure that his attorney fees were paid, while Ms. Varner sought this outcome, as required by court order, to discharge debts she owed. Accordingly, because the Board may have concluded Fisher and Ms. Varner's interests were not adverse to one another, it cannot be said that no reasonable fact finder could be unconvinced of a Rule 1.7(b) violation by clear and convincing evidence.

Regulation Counsel further argues Fisher's continued work aimed at ensuring the completion of the sale of the Varner residence after he received Ms. Varner's order to stop work also violated Rule 1.7(b). Regulation Counsel asserts that, because of his desire to see the sale completed, Fisher continued work on the sale, disregarding Ms. Varner's request. The Hearing Board did not make factual findings regarding this claim. However, given the relative ambiguity of the stop work order, Ms. Varner's refusal to return communications to Fisher, and Fisher's subjective understanding that the stop work order only applied to new matters, we will not overturn the Board's determination that Fisher did not violate Rule 1.7(b). Because we can articulate several reasonable explanations as to why the Hearing Board may have been unconvinced of a violation by the standard of clear and convincing evidence, we conclude a reasonable fact finder could be unconvinced Fisher violated Rule 1.7(b) by clear and convincing evidence.

Accordingly, we affirm the Hearing Board's determination that Fisher did not violate Colo. RPC 1.7(b).

### C. Colo. RPC 3.3(a)(1) and (a)(4)

██ Regulation Counsel argues Fisher violated the rules prohibiting false statements of material fact to tribunals[7] when he

---

6. In contrast to Rule 1.7(b), Rule 1.8(a) is violated if an attorney and a client's interests are adverse, whether or not that adversity negatively impacts the client. Colo. RPC 1.7(b)'s adversity inquiry focuses on the affect the adversity has on the attorney-client relationship, not merely on the fact that adversity exists. Therefore, if adversity exists between an attorney and a client's interests, Rule 1.8(a) is violated, regardless of whether the attorney reasonably believes the ad-

versity will negatively affect his representation of the client. We also discuss Rule 1.7(b) vis-à-vis Rule 1.8(a) in footnote 3 on page 1196.

7. The Colorado Rules of Professional Conduct were revised in 2008. The 2007 version of Colo. RPC 3.3(a) stated:
 A lawyer shall not knowingly:
 (1) make a false statement of material fact or law to a tribunal;

failed to update Ms. Varner's financial affidavit showing his interest in the marital residence. Colo. RPC 3.3(a)(1) states "a lawyer shall not knowingly make a false statement of material fact or law to a tribunal." Under 3.3(a)(1), failure to disclose material information to a tribunal is the equivalent of making a false statement of material fact. Model Rule of Professional Conduct 3.3, cmt. 3; *In re Cardwell*, 50 P.3d 897 (Colo.2002) (holding when client pled guilty to driving under the influence of alcohol, criminal defense attorney had obligation to inform the court client committed perjury when he denied previous alcohol-related convictions). Colo. RPC 3.3(a)(4) disallows an attorney from offering evidence "the lawyer knows to be false." "If a lawyer has offered material evidence and later learns that the evidence is false, the lawyer shall take reasonable remedial measures." Colo. RPC 3.3(a)(4).

Therefore, the focus of a Rule 3.3(a)(1) inquiry is not on the falsity of the statement, but on the materiality of the statement. Similarly, when a lawyer learns that previously submitted evidence is false, under Rule 3.3(a)(4), he must only correct it if the evidence was material. Here, the affidavit provided to the trial court showing security interests in the Varner residence was false in that it was not amended to include Fisher's deed of trust once he obtained it from Ms. Varner. However, the focus of the Board's inquiry was on the materiality of the failure to amend the affidavit.

The ABA comments to Model Rule of Professional Conduct 4.1, requiring lawyers not make false statements of material fact in transactions with others, provides a statement is material if it could have influenced the hearer. Model Rule of Professional Conduct 4.1, cmt. 1. This definition squares with this court's holding in *People v. Small*, 962 P.2d 258 (Colo.1998), where we found an attorney violated Colo. RPC 3.3(a)(1) even though his misrepresentation to a trial court did not affect the outcome of the case. Accordingly, the concept of materiality encompassed in Colo. RPC 3.3(a)(1) is not directed by the outcome of a particular matter, but rather whether there is potential that the information *could* influence a determination as to that matter.

Under the Colorado attorney's lien statute, an attorney has a lien on money, property, claims, or judgment which she aids in obtaining. § 12–5–119. The lien arises by operation of law as soon as the attorney commences representation. *Id.* Therefore, Fisher already had an interest, represented by an attorney's lien, in Ms. Varner's equity in the home at the time the trial judge issued the permanent orders.[8] The fact of Fisher's interest in Ms. Varner's equity was surely material to the trial court when dividing Mr. and Ms. Varner's equity and determining maintenance. However, the trial court was aware Fisher had an interest in Ms. Varner's equity in the marital residence, whether secured by the deed of trust or an attorney's lien. Because the trial court was aware of this interest, it is possible the Hearing Board could have determined Fisher's deed of trust in the marital residence was not material information. Accordingly, because we can articulate at least one reasonable explanation as to why the Board may have been unconvinced of violations of Rule 3.3(a)(1) and (a)(4), we cannot find that no reasonable fact finder could be unconvinced of such violations by a clear and convincing evidence standard. We therefore affirm the trial court's determination Fisher did not violate Rule 3.3(a)(1) and (a)(4).

### D. Colo. RPC 3.4(c)

Regulation Counsel argues Fisher's failure to update Ms. Varner's affidavit after

---

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client....
(4) offer evidence the lawyer knows is false.
The revised 2008 version of Colo. RPC 3.3(a) states:
A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal or fail to correct a false

statement of material fact or law previously made to the tribunal by the lawyer....
(3) offer evidence the lawyer knows to be false.

8. Fisher's attorney's lien was not perfected until May 6, 2004, when he filed the notice of attorney's lien in the El Paso District Court. However, the lien arose when Fisher began representation of Ms. Varner.

he obtained the deed of trust also violated the rule prohibiting attorneys from disobeying the rules of a tribunal. The rule provides "a lawyer shall not knowingly disobey an obligation under the rules of a tribunal...." Regulation Counsel argues Fisher violated this rule because, under C.R.C.P. 26.2 as it existed in 2003,[9] an attorney is "under a duty to supplement its disclosures ... when [the attorney] learns that in some material respect the information disclosed is incomplete or incorrect." As discussed above, it is possible the Hearing Board found that Fisher's failure to correct the affidavit did not materially change the evidence before the trial court. Accordingly, we will not overturn the decision of the Hearing Board on these grounds because we cannot find that no reasonable fact finder could be unconvinced of a Rule 3.4(c) violation by a standard of clear and convincing evidence.

Regulation Counsel also asserts Fisher violated Rule 3.4(c) by collecting $350 more than authorized by the trial court order enforcing his attorney's lien.

Fisher and Ms. Varner entered into a fee agreement at the commencement of representation which allowed Fisher to charge a $350 collection fee from Ms. Varner. When Fisher enforced his attorney's lien, the trial court order authorized him to retain an amount of $3,581.63 from his client trust account. In addition to the $3,581.63 authorized by the trial court, Fisher retained $350 as a collection fee.

The evidence establishes that the trial court order did not prohibit the retention of a collection fee, and Ms. Varner agreed to pay this sum, representing charges accruing from a purpose distinct from the attorney's lien, and thus not included within the lien amount. It is therefore possible the Hearing Board found the retention of the collection fee was not contrary to the trial court's order. Because we can articulate one reasonable explanation as to how the Hearing Board could have concluded there was not clear and convincing evidence establishing a Rule 3.4(c) violation, we will not reverse the decision of the Hearing Board.

**E. Colo. RPC 8.4(c)**

▮▮▮ Regulation Counsel argues the Hearing Board erred in not finding that Fisher violated the rule prohibiting lawyers from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." This court has stated that in order for a lawyer to be found "to have engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, it must be shown that the lawyer possessed a culpable mental state greater than simple negligence.... [W]e conclude that the element of scienter must be shown." *People v. Rader*, 822 P.2d 950, 953 (Colo.1992) (referring to DR 1–102(A)(4), the precursor to Colo. RPC 8.4(c)). The element of scienter is shown when "it is established that the attorney deliberately closed his eyes to facts he had a duty to see ... or recklessly stated as facts things of which he was ignorant." *Id.* (citing *United States v. Benjamin*, 328 F.2d 854, 862 (2nd Cir.1964)). Accordingly, a mental state of at least recklessness is required for an 8.4(c) violation. *See People v. North*, 964 P.2d 510, 513 (Colo. 1998).

Here, it is possible the Hearing Board found Fisher did not have the requisite mental state when he failed to amend Ms. Varner's financial affidavit. For example, the Board could have believed Fisher's testimony that he did not think he was obligated to include his deed of trust in the affidavit, and this misunderstanding of the disclosure rules established only a mental state of negligence. Accordingly, there is sufficient evidence in the record for us to articulate a reasonable explanation as to how the Board may have been unconvinced of a violation. Therefore, a reasonable fact finder could be unconvinced of an 8.4(c) violation by a clear and convincing evidence standard, and we affirm the Hearing Board on this ground.

**V. Sufficiency of Discipline**

Under C.R.C.P. 251.27(b), we affirm the discipline imposed by the Hearing Board unless it 1) bears no relation to the conduct; 2)

---

**9.** C.R.C.P. 26.2 as it existed in 2003 governs Fisher's conduct before the trial court because the conduct in question occurred in 2003. C.R.C.P. 26.2 was repealed in 2005.

is manifestly excessive or insufficient in relation to the needs of the public; or 3) is otherwise unreasonable.

 Regulation Counsel argues the discipline imposed by the Hearing Board is unreasonable and insufficient in relation to the needs of the public. However, we disagree. The Hearing Board made detailed findings pursuant to the ABA Standards for Imposing Lawyer Sanctions. The ABA Standards instruct a disciplining authority to consider the duty violated by the attorney, the attorney's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating and mitigating factors.

The Board found Fisher violated important duties he owed to Ms. Varner. The Board also found Fisher was aware of his conduct when he failed to pursue Ms. Varner's interest in the OPM benefits, and acted knowingly when he obtained the deed of trust. The Board considered the potential for injury to Ms. Varner to be serious; however, it stated it was mindful that Ms. Varner's physical and mental condition made it difficult for Fisher to complete Ms. Varner's objectives following permanent orders. The Board found three mitigating factors: the absence of prior discipline, cooperative attitude in the proceedings, and Fisher's patience in dealing with the delay caused by Regulation Counsel's decision to file a second complaint. The Board found four aggravating factors: selfish motive, refusal to acknowledge the wrongful nature of the conduct, the vulnerability of the victim, and Fisher's substantial experience in the practice of law.

The Hearing Board properly considered the ABA standards and appropriately applied them to the facts in this case. The sanctions imposed by the Hearing Board-suspension from the practice of law in the State of Colorado for six months stayed upon completion of a two-year probationary period-adequately protect the public and were not unreasonable or insufficient. Accordingly, we affirm the Hearing Board's disciplinary order.

## VI. Conclusion

For the foregoing reasons, we affirm the decision of the Hearing Board on all grounds.

Justice EID, concurring in part and dissenting in part.

I join Section III of the majority's opinion affirming the Hearing Board's decision that Fisher violated several Rules of Professional Conduct. I dissent, however, from Section IV of the opinion, which denies Regulation Counsel's cross-appeal and affirms the Board's determination that Fisher did not violate certain other Rules of Professional Conduct. The majority acknowledges that the Board provided little guidance as to why it found no violation with regard to these allegations. Maj. op. at 1199. Yet it affirms the Board's decision based on the fact that it is able to "articulate a reason the Board could have been unconvinced of a violation." *Id.* at 1200 (emphasis added). In my view, we should not affirm a "no violation" determination by the Board simply because we can articulate a possible justification for that result. Instead, when the Board's rationale is sufficiently unclear so as to hinder our review of its "no violation" determination, we should remand the case to the Board.

Under C.R.C.P. 251.27(b), we review the Board's factual findings under a standard of clear error, and its legal conclusions de novo. The problem in this case is that with regard to its determination that Fisher did not violate Rules 1.7(b), 3.3(a), 3.4(c), and 8.4(c), the Board did not set forth its rationale to a sufficient degree to enable us to apply the standard of review articulated by Rule 251.27(b). In other words, it is impossible to review the Board's determinations of "no violation" in this case because there are no factual findings or rationale to review. The majority recognizes this problem, noting that "[w]hen the Board returns a finding of no violation, it does not make a factual finding that we can review." Maj. op. at 1199.

The majority's solution to this problem is to treat the Board's finding of "no violation" as the equivalent of a factfinder's verdict of no liability in a civil case. *See id.* at 1200 (relying on *In the Matter of Rosen,* 198 P.3d 116, 119 (Colo.2008), which considered the regulation counsel's challenge to a no violation finding according to *"the standard re-*

*quired for a motion for directed verdict or motion for judgment notnotwithstanding the verdict* " under the Rules of Civil Procedure (emphasis added)). The standard for granting either a motion for a directed verdict or a motion for judgment notwithstanding the verdict is essentially the same: the verdict must be preserved unless "no reasonable person could reach the same conclusion as the jury." *Hall v. Frankel,* 190 P.3d 852, 862 (Colo.App.2008). Drawing on this standard, the majority holds that the Board's determination of no violation will be affirmed as long as "we can articulate a reason the Board could have been unconvinced of a violation, whether or not it represents the Board's actual reasoning." Maj. op. at 1200. In other words, if the majority can come up with a "possible reason[ ]" for the Board's determination it will affirm the Board, because a "reasonable person" could have come to that conclusion. *Id.*

The majority's assumption that the Hearing Board's determination of no violation should be analogized to a civil verdict of no liability has remained largely unexamined by this court. *See Rosen,* 198 P.3d at 119 (adopting the analogy without discussion); maj. op. at 1199–1200 (relying on *Rosen).* In my view, the analogy is flawed. We require no more of a civil jury than a verdict of "no liability" or, in certain cases, short answers to specific questions. *See generally* CJI–Civ. 4th. But the Hearing Board does not return a verdict, as the majority suggests. Maj. op. at 1199–1200. Rather, the Board "shall prepare *an opinion* setting forth *its findings of fact* and *its decision.*" C.R.C.P. 251.19(a) (emphasis added). At the very least, the Board's opinion must adequately set forth the grounds of decision so that we can review it under the standards set forth by C.R.C.P. 251.27(b).

Unlike the majority, I would not establish a dual system of review depending upon whether the Board found or did not find a violation. Our rules do not outline two different standards of review. *See* C.R.C.P. 251.19(a) and 251.27(b) (making no distinction between appeals of determinations of violations and determinations of no violations). The majority posits that it might be difficult for the Board to articulate why a violation was not proven, or that the panel members may be unconvinced that a violation occurred for different reasons. Maj. op. at 1199. Yet in my view, these concerns would apply equally to the Board's determination that a violation occurred.

The majority describes the difference between the review standards it articulates as "subtl[e]." *Id.* at 1199. To be sure, reviewing factual findings for clear error where we have the Board's rationale, and determining whether a possible explanation can be found where we do not, are both deferential standards. What differs is the *quality* of our review. In the former instance, we have the benefit of the Board's explanation of how it viewed the evidence, how it applied the law to that evidence, and how it arrived at the result it did. In the latter, we are simply searching for a rational explanation for its result—which may or may not have been the grounds for its determination. Even the majority acknowledges that "a clear explanation of the short-comings of the evidence [leading the Board to find no violation] would facilitate our review." *Id.* at 1200. I see no reason why we would systematically hinder our review of no violation determinations.

The majority compounds this error by admonishing Regulation Counsel that their appeals should be few and far between. According to the majority, "[a]ppeals from the Hearing Board's finding of no violation should be taken sparingly, as it is unusually difficult to show error." *Id.* at 1200. Demonstrating that the Board's factual findings are clearly erroneous in the case of a violation determination may also be "unusually difficult," but we have never suggested that appeals of violation determinations should not be brought. Again, I see no reason for us to discourage one side or the other from appealing in the attorney regulation context. Our duty is to ensure that the public is served by ethical and competent attorneys. C.R.C.P. 251.1(a). In my view, we can best discharge that duty by applying the same standards to all attorney regulation appeals.

The facts of this case illustrate the pitfalls of the majority's dual standard. Regulation Counsel alleged that Fisher violated Rule

1.7(b), which prevents an attorney from representing a client if "the representation ... may be materially limited by ... the lawyer's own interests," Colo. RPC 1.7(b) (2007), unless the attorney "(1) reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Colo. RPC 1.7(b)(1)-(2) (2007). Regulation Counsel argued that, in taking an interest in the house to secure his fees, Fisher had a conflict of interest that would materially limit his representation of Ms. Varner. The Hearing Board concluded that "evidence of a conflict is not clear and convincing." Hearing Bd. decision at 10. Leading up to this conclusion, the Board stated that Fisher "had a right to collect his attorney's fees in the domestic court" and to "assert the lien in the action in which [he] performed his services." *Id.; see also id.* (noting again that Fisher "had a right to collect his fees"). The Board also stated that "there is no evidence to suggest [Fisher] did not earn the fees he collected." Id. (emphasis added). The Board then concluded that the evidence of a conflict was not clear and convincing. *Id.*

When read as a whole, the Board's opinion suggests that its no violation determination was based on a mistake of law-namely, that there can be no conflict of interest as long as an attorney had earned and had a right to collect the fees. The question posed by Rule 1.7(b), however, is not whether the fees were earned and could be collected, but rather whether the deed of trust on the residence securing those fees posed a risk that Fisher's representation of Ms. Varner "may be materially limited." *See* Colo. RPC 1.7(b) (2007). By positing a scenario under which the

Board could have found no material limitation, maj. op. at 1201,[1] the majority affirms a determination of no violation that the Board might not have reached had it not been harboring under a mistake of law. In my view, we should not affirm the Board's determination under these circumstances, but rather remand the case.

I agree with the majority that we should defer to the Board's determinations. As the majority notes, "The advantage of having a trier of fact hear testimony is that she is able to evaluate the credibility of the witnesses, detect nuances in testimony, and determine the overall persuasiveness of the evidence." *Id.* at 1199. But that is precisely why the Board should set forth its analysis of the evidence that led it to the conclusion it reached, as opposed to this court coming up with a possible explanation for its conclusion. Because the majority affirms the Board's no violation determinations rather than remanding the case, I respectfully dissent from its opinion.

I am authorized to state that Chief Justice MULLARKEY and Justice RICE join in this dissent.

---

1. I disagree with the majority that its possible rationale could support the Board's finding of no violation. It posits that

> [t]he Hearing Board may have found that Fisher's interest would not negatively affect Ms. Varner. In fact, Ms. Varner and Fisher's interests were aligned with regard to the sale of the residence.

Maj. op. at 1201. Yet the interests of Ms. Varner and Fisher in the sale of the residence were not aligned. Ms. Varner's interest was to obtain the highest possible sale price. Fisher's interest was to obtain a sale price that was high enough so that his deed of trust would be paid off. Indeed, the majority concludes that, under Colo. RPC 1.8(a), the interests were "adverse." Maj. op. at 1196. Thus, under Rule 1.7(b)(1), the only ques-

tion is whether "the lawyer reasonably believe[d] the representation w[ould] not be adversely affected." Colo. RPC 1.7(b)(1). In my view, it would be difficult to show that one could reasonably believe that conduct categorically prohibited as adverse under 1.8(a) would not adversely affect an attorney's representation under 1.7(b)(1).

I also disagree with the majority's focus on whether Fisher's representation was in fact affected by his interest in the residence. *See* maj. op. at 1201 (concluding that his interest did not negatively affect Ms. Varner). The question is not whether Fisher's interest in the residence did *in fact* adversely impact the representation, but rather whether he reasonably believed, at the time the conflict appeared, that it would not. *See* Colo. RPC 1.7(b)(1) (2007).