Colorado Court of Appeals Opinions || July 16, 2015


Colorado Court of Appeals -- July 16, 2015
2015 COA 99. No. 14CA0716. In re the Marriage of Dixon v. Samuel J. Stoorman & Associates PC.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 99

 
 



 Court of Appeals No. 14CA0716
 Jefferson County District Court No. 08DR1219
 Honorable Randall C. Arp, Judge


 In re the Marriage of Kristy Marie Dixon, n/k/a Kristy Casagranda,

 Petitioner,

 and

 Brian Todd Dixon,

 Appellee,

 v.

 Samuel J. Stoorman & Associates PC,

 Attorney-Appellant.


 ORDER AFFIRMED IN PART
 AND REVERSED IN PART

 Division VII
 Opinion by JUDGE NAVARRO
 Gabriel and Richman, JJ., concur

 Announced July 16, 2015


 Jody Brammer-Hoelter, LLC, Johanna L. Brammer-Hoelter, Lafayette, Colorado, for Appellee

 Samuel J. Stoorman & Associates PC, Samuel J. Stoorman, Nicole R. Hanson, Denver, Colorado, for Attorney-Appellant

 Â 


 Â¶1Â Â Â Â Â Â Â  Samuel J. Stoorman & Associates PC (law firm), the lien claimant in this marital dissolution action, appeals from the trial courtâs order denying its motion for entry of judgment against Brian Todd Dixon (husband) and awarding him reasonable attorney fees and costs. The law firm sought to enforce its lien against the maintenance payments that husband was obligated to pay to the law firmâs former client, Kristy Marie Dixon, now known as Kristy Casagranda (wife). The law firm had represented wife in the dissolution action giving rise to husbandâs maintenance obligation. The trial court determined that the maintenance payments were exempt from enforcement of the attorneyâs lien. We agree with that conclusion and, thus, affirm the order denying the law firmâs motion for judgment against husband. We reverse, however, the award of attorney fees and costs to husband.

 
 I. Background
 
 Â¶2Â Â Â Â Â Â Â  The law firm represented wife in her February 2009 divorce from husband. The permanent orders entered as part of the dissolution decree required husband to pay wife monthly maintenance of $1500 for seventy-two months, or until February 2015.


 
 Â¶3Â Â Â Â Â Â Â  In June 2008, before the permanent orders hearing, the law firm filed notice of its claim of an attorneyâs lien pursuant to section 12-5-119, C.R.S. 2014. On May 18, 2009, the law firm amended its notice and moved to foreclose and enforce its lien against wife, and for entry of judgment against her in the amount of $13,744.68. On June 26, 2009, the trial court granted the motion and entered judgment, finding that the law firm had a âvalid and enforceable lien in the amount of $13,268.06 as of April 9, 2009 upon all the monies, properties, choses in action, claims and demands in suit, and upon any property awarded toâ wife in the dissolution action, including âany money due [wife] in the hands of [husband].â
 
 Â¶4Â Â Â Â Â Â Â  In October 2012, the law firm notified husband by letter that its lien had attached to âmaintenance (alimony) paymentsâ that husband owed wife. The letter noted that husband had been served with the law firmâs May 18, 2009, amended notice of lien as well as the courtâs judgment enforcing the lien against wife. The letter requested that husband forward to the law firm all payments payable to wife after May 18, 2009, âas your failure to have done so (or to continue to do so in the future) may expose you to multiple liability pursuant to Colorado law.â The law firm claims thatÂ husband ignored its notice and continued to make spousal maintenance payments directly to wife.


 
 Â¶5&Â Â Â Â Â Â Â  In January 2014, the law firm moved for a judgment against husband in the amount of $31,126.85, consisting of the full amount of its judgment against wife plus interest. The trial court denied the law firmâs motion for judgment against husband and entered an order awarding him the attorney fees and costs he had incurred in defending against it.
 
 Â¶6Â Â Â Â Â Â Â  The trial court noted that the law firmâs lien notification put husband in a difficult position. Complying with the notification possibly could have led to his being held in contempt for failing to pay court-ordered maintenance, while ignoring the notification exposed him to the risk of having to pay maintenance to both wife and the law firm. Ultimately, the trial court determined that (1) an attorneyâs lien requires some form of âexecutionâ to be effective against third parties such as husband and (2) husbandâs maintenance obligation to wife was exempt from the reach of the attorneyâs lien under section 13-54-102(1)(u), C.R.S. 2014. That statute exempts from levy and sale under writ of attachment or writ of execution â[a]ny court-ordered domestic support obligation orÂ payment, including a maintenance obligation or payment or a child support obligation or payment [complying with section 13-54-102.5, C.R.S. 2014].â The trial court further found that enforcing an attorneyâs lien against maintenance payments or obligations would violate public policy.


 
 Â¶7Â Â Â Â Â Â Â  In awarding attorney fees and costs to husband, the trial court found that the law firm lacked any basis for its attempt to obtain judgment against him.
 
 II. Was the Attorneyâs Lien Enforceable Against Husbandâs Maintenance Obligations?
 
 Â¶8Â Â Â Â Â Â Â  The law firm contends that the trial court erred in finding that the law firmâs attorneyâs lien could not be enforced against husbandâs spousal maintenance obligations. We disagree.
 
 A. Attorney Charging Liens
 
 Â¶9Â Â Â Â Â Â Â  Section 12-5-119 provides, in relevant part:
 
 All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorneyÂ may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees. . . . Such lien may be enforced by the proper civil action.


 
 Â¶10Â Â Â Â Â Â Â  The lien, called a charging lien, automatically attaches to the fruits of the attorneyâs representation of the client, to the extent of the attorneyâs reasonable fees remaining due and unpaid. In re Marriage of Berkland, 762 P.2d 779, 782 (Colo. App. 1988). It accrues from the moment an attorney commences services, and its purpose is to satisfy the attorneyâs equitable claim for services rendered to the client. In re Fisher, 202 P.3d 1186, 1197 (Colo. 2009); Cope v. Woznicki, 140 P.3d 239, 241 (Colo. App. 2006).
 
 Â¶11Â Â Â Â Â Â Â  An attorney may immediately enforce the lien against the client once judgment in favor of the client is entered. In re Marriage of Smith, 687 P.2d 519, 520 (Colo. App. 1984). As against a third party, however, the statute requires that the attorney first giveÂ notice of the lien. Id. The notification places others on notice that the attorney claims an interest in the funds subject to the lien. Fisher, 202 P.3d at 1197; In re Marriage of Mitchell, 55 P.3d 183, 186 (Colo. App. 2002).


 
 Â¶12Â Â Â Â Â Â Â  The charging lien may then be enforced by âthe proper civil action.â Â§ 12-5-119. That phrase means either bringing an independent action or moving to reduce the lien to judgment in the civil action that gave rise to the lien claim. Gee v. Crabtree, 192 Colo. 550, 552, 560 P.2d 835, 836 (1977).
 
 B. Maintenance Is Exempt From Enforcement of a Charging Lien
 
 Â¶13Â Â Â Â Â Â Â  The record shows that the law firm provided statutory notice of its charging lien to husband and that the law firmâs motion for entry of judgment against husband was an attempt to reduce the lien to judgment against a third party through a proper civil action. The law firm contends that the trial court erred in relying on section 13Â­54-102(1)(u) to conclude that maintenance payments and obligations are exempt from enforcement of the charging lien. We disagree that the trial courtâs reliance was misplaced or that its conclusion was erroneous.


 
 Â¶14Â Â Â Â Â Â Â  When interpreting a statute, our goal is to effectuate the intent of the General Assembly. People v. Rockwell, 125 P.3d 410, 417 (Colo. 2005). We initially examine the plain language for direction. Id. We may also rely on other guideposts to discern the intended meaning when the statutory language is ambiguous or if the terms appear to conflict with other statutory provisions. Id. Traditional guideposts include the legislative history, prior law, consequences of a given interpretation, agency interpretations, and the overall end the legislature intended to achieve. Id.
 
 Â¶15Â Â Â Â Â Â Â  Section 13-54-102(1) provides, in pertinent part:
 
 The following property is exempt from levy and sale under writ of attachment or writ of execution:
 
 . . .
 
 (u) Any court-ordered domestic support obligation or payment, including a maintenance obligation or payment or a child support obligation or payment, if the child support obligation or payment meets the requirements of section 13-54-102.5.
 
 Â¶16Â Â Â Â Â Â Â  We agree with the law firm that its motion for judgment against husband does not fall within the literal terms of section 13-54-102(1)(u). That statute concerns levy and sale under writ of attachment or writ of execution, neither of which is at issue here.


 
 Â¶17Â Â Â Â Â Â Â  C.R.C.P. 102 provides for attachment, an intermediate process that prevents a party from disposing of or impairing the value of non-exempt property that may be used to satisfy a possible future judgment. See 10 Deanna Lee Westfall & Britney Beall-Eder, Colorado Practice Series, Creditorsâ Remedies â Debtorsâ Relief Â§ 7:30 (2014). A claimant generally resorts to attachment in circumstances where another party has absconded or is about to abscond with or dissipate assets. Id. Further, attachment can be used only in actions based on express and implied contracts or those where a defendant may be liable in damages for torts committed against a Colorado plaintiffâs person or property. Id. at Â§ 7:32; see C.R.C.P. 102(a).
 
 Â¶18Â Â Â Â Â Â Â  Execution of judgments generally refers to the ââjudicial enforcement of a money judgement, usually by seizing and selling the judgment debtorâs property.ââ People ex rel. Strodtman, 293 P.3d 123, 135 (Colo. App. 2011) (quoting Blackâs Law Dictionary 650 (9th ed. 2009)). Under sections 13-52-102 to -111, C.R.S. 2014, and C.R.C.P. 69, execution is available to enforce money judgmentsÂ through a writ issued by a court that commands a sheriff or other competent officer to take and sell a judgment debtorâs non-exempt property to satisfy the debt. See Westfall & Beall-Eder, Â§ 7:131.


 
 Â¶19Â Â Â Â Â Â Â  This case, however, involves the law firmâs attempt to obtain a money judgment against husband, rather than an attempt to collect that judgment through a writ of attachment or execution. In a similar situation, a division of this court recognized that a proceeding to enforce an attorneyâs charging lien does not fall within the âliteral termsâ of section 13-54-102(1)(u) because it does not involve a levy upon property under a writ of execution or a writ of attachment. In re Marriage of Etcheverry, 921 P.2d 82, 83 (Colo. App. 1996). We agree with the division in Etcheverry. But that does not end the analysis.
 
 Â¶20Â Â Â Â Â Â Â  The division in Etcheverry, notwithstanding its view that section 13-54-102(1)(u) did not literally apply to proceedings to enforce a charging lien, held that the lien could not be asserted against funds owed to a parent as child support under a court order. Id. at 83-84. Etcheverry relied on the public policy embodied in section 13-54-102(1)(u), as well as case law from Colorado and other states. Id. For instance, Etcheverry referred to Hall v. Hall-Stradley, 776 P.2d 1166 (Colo. App. 1989), a case predating the child support exemption in section 13-54-102(1)(u) but nonetheless holding that, as a matter of public policy, child support owed to a custodial parent could not be garnished because it represented a support right belonging to the child. Id. at 1167.[1]Etcheverry concluded that to allow the enforcement of an attorneyâs charging lien against a court-ordered child support obligation âwould âwholly frustrateâ the courtâs function in attempting to provide adequate support for minor children.â 921 P.2d at 84 (quoting Fuqua v. Fuqua, 558 P.2d 801 (Wash. 1977)).


 
 Â¶21Â Â Â Â Â Â Â  After Etcheverry, the General Assembly in 2007 amended section 13-54-102(1)(u) to add the exemption for a court-ordered âmaintenance obligation or paymentâ to the existing exemption for child support. Ch. 226, sec. 3, Â§ 13-54-102(1)(u), 2007 Colo. Sess. Laws 877.
 
 Â¶22Â Â Â Â Â Â Â  Following the rationale of Etcheverry, and for the three reasons discussed below, we conclude that the General Assembly hasÂ evinced a public policy protecting maintenance obligations and payments from an attorneyâs charging lien.


 
 Â¶23Â Â Â Â Â Â Â  First, the text of the 2007 amendment to section 13-54Â­102(1)(u) shows that its purpose was to increase the exemptions allowed in debt collection proceedings and bankruptcy. See Â§ 13Â­54-107, C.R.S. 2014 (exemptions in bankruptcy available to Colorado residents are limited to those provided by Colorado statutes). We thus discern a legislative intent to protect court-ordered maintenance payments to the same extent as child support (i.e., both should be insulated from debt collection efforts). Given that (a) child support was shielded from an attorneyâs charging lien at the time of the amendment (as discussed in Etcheverry), and (b) a proceeding to reduce a charging lien to judgment is one step in the collection of a debt to the attorney, see Fisher, 202 P.3d at 1197 (âIn order to collect under the lien, the attorney must reduce it to a judgment.â), the amendment manifests an intent to exempt a maintenance obligation or payment from a money judgment enforcing a charging lien. See Vigil v. Franklin, 103 P.3d 322, 327 (Colo. 2004) (â[W]hen it chooses to legislate in a particular area, theÂ General Assembly is presumed to be aware of existing case law precedent.â).


 
 Â¶24Â Â Â Â Â Â Â  To conclude otherwise would lead to the anomalous result that an attorney may reduce to judgment a charging lien in a maintenance obligation, but the attorney may not seek execution of that judgment using typical collection procedures like a writ of execution or attachment (due to the literal terms of section 13-54Â­102(1)(u)). A more reasonable conclusion is that an attorney may do neither. See Â§ 2-4-201(1)(c), C.R.S. 2014 (âIn enacting a statute, it is presumed that: . . . [a] just and reasonable result is intended.â). In other words, although section 13-54-102(1)(u) does not strictly apply to the law firmâs motion here, we conclude that the law firmâs action is contrary to the spirit of that statute. See People v. Manzanares, 85 P.3d 604, 606 (Colo. App. 2003) (âCourts should promote the spirit of a statute and not simply the letter of the law.â).[2]
 
 Â¶25Â Â Â Â Â Â Â  Second, to allow enforcement of a charging lien against a court-ordered maintenance payment or obligation would defeat theÂ purpose of that payment or obligation. Maintenance is intended to be a substitute for marital support âthat can be used, for example, to ease a spouseâs transition into the work force and prevent the spouse from becoming dependent on public assistance.â In re Wise, 264 B.R. 701, 707 (Bankr. D. Colo. 2001) (citing In re Marriage of Sinn, 696 P.2d 333, 336 (Colo. 1985)), affâd, 285 B.R. 8 (D. Colo. 2002), affâd, 346 F.3d 1239 (10th Cir. 2003); see Â§ 14-10-114(1)(a)(II), C.R.S. 2014 (An award of spousal maintenance âmay be appropriate if a spouse needs support and the other spouse has the ability to pay support.â); In re Marriage of Mirise, 673 P.2d 803, 804 (Colo. App. 1983) (Maintenance âis primarily concerned with insuring that, after dissolution, the basic needs of a disadvantaged spouse are met.â);. Accordingly, in its permanent orders here, the trial court awarded maintenance to wife because she âlack[ed] sufficient property and [was] unable to support herself through appropriate employment.â


 
 Â¶26Â Â Â Â Â Â Â  Because maintenance ââis intended for the support of the party to whom it is awarded, its amount is fixed with reference to her [or his] necessities, and the courts will not countenance its appropriation to any other purpose.ââ Fuqua, 558 P.2d at 805Â (quoting Mooney v. Mooney, 62 N.Y.S. 769 (N.Y. Sup. Ct. 1899)). Courts, therefore, have long held that an attorneyâs lien may not be enforced against alimony or spousal maintenance. See, e.g., Turner v. Woolworth, 117 N.E. 814, 816 (N.Y. 1917) (Cardozo, J.) (rejecting application of attorneyâs lien to alimony because the âpurpose of alimony is supportâ and â[e]quity, which creates the [alimony] fund, will not suffer its purpose to be nullifiedâ).


 
 Â¶27Â Â Â Â Â Â Â  We acknowledge the law firmâs point that, unlike child support payments where the child is the true recipient and beneficial owner of the support obligation, the spouse entitled to maintenance chose to retain the attorney and was awarded spousal support as a result of the attorneyâs efforts. Notwithstanding this valid distinction, we conclude that permitting the enforcement of an attorneyâs charging lien against spousal maintenance would raise the same public policy concern at issue in Etcheverry because it would frustrate the courtâs function in attempting to provide adequate support for the spouse needing maintenance. See 921 P.2d at 84.
 
 Â¶28Â Â Â Â Â Â Â  Third, the majority of courts in other jurisdictions that have considered the issue have concluded that an attorneyâs charging lien may not be enforced against spousal maintenance paymentsÂ and obligations. See Olszewski v. Jordan, 109 A.3d 910, 920 (Conn. 2015) (collecting cases); Fuqua, 558 P.2d at 804 (âA majority of the courts of other jurisdictions have declared attorneyâs liens filed against funds representing either child support or alimony to be invalid.â); see also Bero-Wachs v. Law Office of Logar & Pulver, 157 P.3d 704, 708 (Nev. 2007) (âA majority of jurisdictions that have addressed this issue have concluded that exempt property is exempt from the attachment of an attorneyâs lien.â); 7 Am. Jur. 2d Attorneys at Law Â§ 330 (âA charging lien also does not attach to an award of alimony and maintenance.â). In so holding, some courts have relied on the public policy considerations discussed above. See, e.g., Dyer v. Dyer, 438 So. 2d 954, 955 (Fla. Dist. Ct. App. 1983); Columbus Pers. Serv. v. Gachette, 279 S.E.2d 746, 747 (Ga. Ct. App. 1981). Other courts have relied on statutes that, like section 13-54-102(1)(u), exempt spousal maintenance from execution, attachment, or application to the satisfaction of money judgments. See, e.g., In re Marriage of Comley, 32 P.3d 1128, 1131Â­32 (Kan. 2001); Bero-Wachs, 157 P.3d at 706-08; Balanoff v. Niosi, 791 N.Y.S.2d 553, 554-56 (N.Y. App. Div. 2005).[3]


 
 Â¶29Â Â Â Â Â Â Â  Accordingly, we hold that an attorneyâs charging lien may not be enforced against a court-ordered spousal maintenance obligation or payment. We thus affirm the trial courtâs denial of the law firmâs motion to enforce the lien against husbandâs maintenance obligations to wife.
 
 III. Attorney Fees and Costs
 
 Â¶30Â Â Â Â Â Â Â  Although we affirm the trial courtâs judgment against the law firm, we do not believe that the law firmâs position lacked substantial justification. Cf. Â§ 13-17-102(2), (4), C.R.S. 2014 (requiring that attorney fees be assessed if an attorney or party brought an action, or any part thereof, that lacked substantial justification, which means it was substantially frivolous, groundless or vexatious). The question whether a charging lien may be enforced against spousal maintenance payments or obligations had not been decided at the time of the law firmâs motion. As explained,Â the literal terms of section 13-54-102(1)(u) do not foreclose the law firmâs request, although we have ultimately concluded that the request is inconsistent with the object of that statute. Consequently, we reverse the award of attorney fees and costs to husband.


 Â¶31Â Â Â Â Â Â Â  For the same reason, we deny husbandâs request for an award of attorney fees and costs incurred on appeal.

 IV. Conclusion

 Â¶32Â Â Â Â Â Â Â  The portion of the order denying the law firmâs motion for judgment against husband is affirmed. The portion of the order awarding attorney fees to husband is reversed.

 JUDGE GABRIEL and JUDGE RICHMAN concur.


 [1] As Etcheverry noted, the Hall decision received legislative approval by the subsequent adoption of section 13-54-102(1)(u), C.R.S. 2014, which initially contained only an exemption for child support, and section 13-54-102.5(1), C.R.S. 2014. In re Marriage of Etcheverry, 921 P.2d 82, 83 (Colo. App. 1996).

 [2] Indeed, courts in other jurisdictions have invoked similar statutes when concluding that a charging lien may not be enforced against court-ordered spousal maintenance, as we shall discuss.

 [3] One court has held that that a charging lien may not be asserted against child support but may be asserted against spousal maintenance. See Jasper v. Smith, 540 N.W.2d 399, 403-05 (S.D. 1995). That court relied on the fact that, unlike child support, maintenance was not exempted from the statutory attachment process. See id. at 403 (âThe existence of these statutes indicates the legislature knows how to exempt property from attachment of a lien when it deems it in the best interest of the state to do so.â). In contrast, both child support and maintenance are exempted from a writ of attachment or execution under section 13-54-102(1)(u).




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || July 16, 2015


Back