2016 COA 1

**IN RE the MARRIAGE OF Cody M. MORTON, Appellee,**

**and**

**Samantha Morton, n/k/a Samantha Lee, Appellant.**

**Court of Appeals No. 13CA2199**

Colorado Court of Appeals, Div. I.

Announced January 14, 2016

Cody M. Morton, Pro Se.

Ciccolella Family Law, P.C., John B. Ciccolella, Colorado Springs, Colorado, for Appellant.

Opinion by JUDGE TAUBMAN

¶ 1 In this dissolution of marriage action, Samantha Morton, now known as Samantha Lee (wife), raises two principal issues on appeal relating to the trial court's consideration of her student loans obtained during the marriage. The first issue is whether the trial court erred in entering wife's loans as her "separate debt." The second issue is whether the trial court erred in considering wife's student loans as a financial resource in determining the amount of maintenance she was to receive. A third and related issue is whether the trial court erred in determining maintenance before it had concluded its allocation of marital property.

¶ 2 We agree with wife's contentions on these issues and, therefore, reverse the trial court's judgment and orders. We remand the case to the trial court to reconsider the permanent orders.

## I. Background

¶ 3 This case involves a marriage of approximately six years. During the marriage, Cody M. Morton (husband) was employed as a firefighter, while wife worked sporadically and also attended school to obtain training as a radiological technologist (RT). Three trial court orders are at issue here: (1) a final order, dated July 2, 2013; (2) an order concerning the decree of dissolution of marriage and partial final orders, dated August 8,

2013; and (3) an order regarding wife's second motion for posttrial relief dated October 16, 2013.

## II. Student Loans

■ ¶ 4 In dividing marital and separate property, the court ordered that wife would be responsible for all of the student loan debt: $6449 as marital debt and $33,000 as wife's "separate debt." As to the separate debt, the court found that it was not "fair or equitable" for husband to be responsible for debt that wife "borrowed … after the parties separated, after the petition for dissolution was filed[,] and after temporary orders." Wife contends that the court abused its discretion by finding that all of the student loans incurred after the parties' separation were her separate debt. We agree.

■ ¶ 5 An order classifying property as a marital asset or a separate asset presents a legal issue that is based on the court's factual findings. *In re Marriage of Krejci*, 2013 COA 6, ¶ 3, 297 P.3d 1035, 1037. We defer to the trial court's factual findings absent an abuse of discretion and independently review its resolution of legal questions. *In re Marriage of Williamson*, 205 P.3d 538, 540 (Colo. App.2009).

■ ¶ 6 A party's student loan obtained during marriage constitutes marital debt. *In re Marriage of Speirs*, 956 P.2d 622, 624 (Colo.App.1997). Any debts incurred by a party during a predecree separation are likewise marital. *In re Marriage of Burford*, 26 P.3d 550, 560 (Colo.App.2001).

¶ 7 It is undisputed that wife incurred all of her student loans during the marriage or during the parties' predecree separation. Thus, all of the student loans constitute marital debt. *See id.*; *Speirs*, 956 P.2d at 624. To the extent the trial court classified $33,000 as wife's "separate debt" solely because she obtained them during the parties' separation, it erred.

■ ¶ 8 The student loans comprise approximately one third of the parties' overall marital estate. Because the error affects the parties' substantial rights, the order dividing the property must be reversed. *See In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo.

2001) (holding errors by the court in dividing property are reversible when the aggregate effect of such errors affects the parties' substantial rights); *see also In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo.App.2003) (holding an error affecting a large percentage of the marital estate requires remand to the district court to correct such error).

■ ¶ 9 The determination that a student loan is marital debt, however, does not foreclose a trial court from allocating responsibility for payment of the loan entirely to the party who incurred it. *See Speirs*, 956 P.2d at 624. A court does not abuse its discretion in finding that a student loan should be solely the incurring party's responsibility because the party's degree was earned later in the marriage and will primarily benefit that party. *See id.* at 625; *see also In re Marriage of Morehouse*, 121 P.3d 264, 267 (Colo.App.2005) (holding a court is under no obligation to divide marital debts equally).

¶ 10 Thus, in dividing the marital property on remand, the court should first include wife's total amount of student loans as a marital debt. It must then exercise its discretion to allocate that debt equitably as part of the overall property distribution. *See Speirs*, 956 P.2d at 624.

■ ¶ 11 We reject wife's assertion that the total amount of student loans was $33,452.08, and that the court clearly erred by finding she obtained an additional $33,000 during the separation. The record reveals conflicting evidence as to the total amount of the student loans. For example, the record shows that wife obtained approximately $16,000 in loans between 2007 and 2008 for her RT program and took out a $6258 loan for the sonogram program she began in July 2012. Wife also testified that sonogram school would cost $32,000. Nevertheless, wife testified that her loans for both the RT and sonogram programs totaled only $33,452.

¶ 12 Further, wife's January and February 2013 financial affidavits show that her Stafford loans totaled $40,713.54, $25,000 of which was disbursed during the separation. However, Exhibit G shows that she incurred

a total of $45,168 in Stafford and direct unsubsidized loans, with $17,000 in disbursements occurring during the parties' separation.

¶ 13 Where the evidence is unclear, we defer to the trial court's findings. *See In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo. App.1995). Thus, we may not disturb the trial court's finding that wife obtained $33,000 in student loans after the parties' separation. *See id.*; *see also In re Marriage of Plesich*, 881 P.2d 379, 381 (Colo.App.1994) (reviewing court views evidence in the light most favorable to the court's order).

¶ 14 Because we are reversing the trial court's division of marital property and debts, on remand the court must consider the parties' economic circumstances at the time of the remand. *See In re Marriage of Wells*, 850 P.2d 694, 699 (Colo.1993).

### III. Maintenance

¶ 15 Wife contends that the trial court erred in considering her student loans as a financial resource when determining the amount of maintenance to which she was entitled. She further contends the trial court erred by awarding maintenance before dividing the marital property. We agree with both contentions.

### A. Student Loans as Income for Purposes of Maintenance

¶ 16 In its decree of dissolution in the partial final orders, the trial court concluded that wife "does not have the financial resources, nor is she being awarded adequate property[,] to meet her current financial needs." Noting that wife was a full-time student and that husband was supportive of wife's education, the court determined that wife was entitled to an award of maintenance in the amount of $850 per month for a period of ten months. In making this determination, the court concluded that wife's student loans were a resource to her in the amount of $30,664. The court concluded that if those loans were divided into monthly loan amounts of $2555 per month, this would leave her $755 per month for living expenses.

¶ 17 The maintenance statute then in effect, Ch. 151, sec. 1, § 14–10–114(4), 2001 Colo. Sess. Laws 483–84, required the court to consider multiple statutory factors to determine whether wife was entitled to spousal maintenance. These factors included "[t]he financial resources of the party seeking maintenance, including marital property apportioned to such party"; the ability of that party to meet his or her own needs; the time needed to seek additional education and employment; that party's future earning capacity; the duration of the marriage; the standard of living during the marriage; and the ability of the spouse from whom maintenance is sought to pay spousal maintenance. § 14–10–114(4)(a)–(f), 2001 Colo. Sess. Laws at 484.

¶ 18 Although the Uniform Dissolution of Marriage Act, section 14–10–101 to –133 C.R.S.2015, does not define the term "financial resources," that term cannot reasonably be understood to include loan proceeds.

¶ 19 We acknowledge that the term "financial resources" may include loan proceeds and therefore, may be ambiguous. However, we are convinced, for two reasons, that the General Assembly did not intend to permit consideration of loan proceeds as a resource in the determination of maintenance.

¶ 20 First, consideration of loan proceeds in determining maintenance has a great potential for serious injustice.

¶ 21 A statute must be construed in a manner that gives effect to the legislative purpose underlying its enactment and that achieves a just and reasonable result consistent with that purpose. § 2–4–201(1)(c), C.R.S.2015; *Eckhardt v. Village Inn (Vicorp)*, 826 P.2d 855, 859 (Colo.1992).

¶ 22 When a statute is susceptible of more than one reasonable interpretation, the court must look beyond the language of the statute and consider other factors, such as the object sought to be attained, the nature of the problem addressed by the legislation, and the consequences of a particular construction. *See* § 2–4–203, C.R.S.2015; *Mesa Cty. Valley Sch. Dist. No. 51 v. Goletz*, 821 P.2d 785, 787 (Colo.1991). A statutory con-

struction that would defeat the evident legislative intent will not be followed. *Henderson v. RSI, Inc.,* 824 P.2d 91, 95 (Colo.App.1991).

¶ 23 Many people have received loans or have the ability to receive additional funds by borrowing money up to the limits of their credit cards. The consideration of such loan proceeds as an asset or financial resource to deprive a spouse of maintenance or reduce the amount of maintenance ignores a fundamental characteristic of a loan: it has to be paid back, ordinarily with interest. In almost all situations, the asset value of a loan—the loan proceeds—is completely offset (or more than offset) by the liability amount—the amount, together with interest—that has to be paid to the creditor. Thus, it would be misleading to consider loan proceeds as a financial resource unless the court also considers the associated liability, in which case (and in virtually every case) the net asset value is zero.[1]

¶ 24 The principal objective of maintenance is not to even out periods of inconsistent revenue and expenses: the purpose is to assist a spouse needing support when the other spouse has the ability to pay support. *See* § 14–10–114(1)(a)(II), C.R.S.2015; *see also In re Marriage of Dixon,* 2015 COA 99, ¶ 25, —— P.3d ——. Consideration of loan proceeds as a financial resource, which requires in essence the spouse receiving maintenance to pay back a loan, thereby resulting in a reduced maintenance award, is inconsistent with the purposes of maintenance and the statutory maintenance scheme.

¶ 25 Indeed, to consider student loan proceeds as either financial resources or income for purposes of determining an award of maintenance would thwart the very purposes of the maintenance statute. To do so would mean that in every case, a court could consider a party's ability to borrow money, from credit cards or otherwise, and consider that borrowing capacity as a factor in determining maintenance. The flaw with this approach is that it ignores the borrowing party's responsibility to repay a loan, usually with interest.[2] Even if some student loan proceeds are used to pay living expenses, as was the case here, the student loan proceeds must still be repaid, with interest. Thus, while student loans may increase the parties' cash flow, it will not increase their net worth.

¶ 26 Further, a party is not required to deplete his or her share of the marital estate in order to qualify for maintenance. *See, e.g. In re Marriage of Yates,* 148 P.3d 304, 313 (Colo.App.2006).

¶ 27 Second, we have found no reported case in which a Colorado court has approved the consideration of loan proceeds as a financial resource in the determination of maintenance. The absence of such a case supports our conclusion that loan proceeds may not constitute financial resources for purposes of maintenance.[3]

¶ 28 As a result, we conclude that the trial court erred in determining that wife's student loans, whether separately designated for school expenses or for living expenses, could be considered as a factor when determining the amount of maintenance to which she was entitled.

¶ 29 Accordingly, we reverse the trial court's determination of maintenance and remand for reconsideration of the amount of maintenance without consideration of the amount of student loans as either a financial resource or income of any kind.

## B. Determining Maintenance Before Division of Property

¶ 30 Wife further contends that the trial court erred in determining the award of

1. Our analysis here is confined to the consideration of loan proceeds for the purpose of determining maintenance. We do not address the extent to which loan proceeds may be considered differently in a business context.

2. The dissent acknowledges that the trial court must consider the liability attached to student loan proceeds, but it does not provide any guidance how the trial court is to do so.

3. We recognize that in *In re Marriage of Hill,* 166 P.3d 269, 272 (Colo.App.2007), a division of this court noted that the parties' "financial resources" for purposes of attorney fees included their income, assets, and liabilities. That decision is entirely consistent with our construction of the term "financial resources."

maintenance before fully dividing the parties' marital and separate property. Again, we agree.

¶ 31 A trial court's maintenance award depends on. its findings and order dividing property. *Balanson,* 25 P.3d at 43; *see also* § 14–10–114(3)(a), 2001 Colo. Sess. Laws at 483 (requiring the court to consider the "marital property apportioned" when determining both the threshold entitlement to and the amount and duration of a maintenance award). Therefore, the court must first divide the marital property before deciding whether maintenance is necessary to provide for the requesting party's reasonable needs. *In re Marriage of Huff,* 834 P.2d 244, 248 (Colo.1992); *In re Marriage of Jones,* 627 P.2d 248, 253 (Colo.1981) ("Only after the property division has been made can the court determine, by application of the statutory standards, whether maintenance is necessary to provide for the reasonable needs of one of the parties.").

¶ 32 Accordingly, on remand, the court must divide the marital property and debts before it considers maintenance, and the property and maintenance issues must both be decided before it considers an award of attorney fees. *See Huff,* 834 P.2d at 248; *Jones,* 627 P.2d at 253.

### IV. Attorney Fees

¶ 33 Because we are reversing the trial court's permanent orders with regard to division of marital property and award of maintenance, we must also set aside its award of attorney fees. *Huff,* 834 P.2d at 248 ("[A]n award of attorney fees must be reviewed in light of the parties' financial resources after the property division and any maintenance award...."). On remand, after dividing the parties' marital and separate property and reconsidering wife's entitlement to an award of maintenance, the trial court may reconsider wife's entitlement to an award of attorney fees under section 14–10–119, C.R.S.2015.

¶ 34 In reconsidering all these issues, the court must base its decision not only on the new property division, but also on the parties' financial circumstances at the time of remand. *See In re Marriage of Balanson,* 107 P.3d 1037, 1047–48 (Colo.App.2004). Accordingly, the trial court must take additional evidence on these issues.

¶ 35 If the court determines that wife is entitled to an award of attorney fees, it may reconsider her argument that she is entitled to an award of attorney fees based on her lawyer's full hourly rate rather than on a reduced hourly rate, in light of *In re Marriage of Swink,* 807 P.2d 1245 (Colo.App. 1991).

### V. Attorney Fees on Appeal

¶ 36 Husband requests attorney fees under section 13–17–102, C.R.S.2015, arguing that wife's appeal is frivolous. Considering our disposition, the appeal is not frivolous. We deny the request.

¶ 37 In her briefs, wife requests an award of attorney fees incurred on appeal under section 14–10–119. However, because wife withdrew her request for appellate attorney fees at oral argument, we do not address this issue.

### VI. Conclusion

¶ 38 The judgment and orders are reversed, and the case is remanded to the trial court to reconsider the permanent orders as stated in this opinion.

JUDGE BERGER concurs.

JUDGE HAWTHORNE concurs in part and dissents in part.

JUDGE HAWTHORNE, concurring in part and dissenting in part.

I agree with the majority's conclusion that the court abused its discretion by finding that all of the student loans incurred after the parties' separation were separate debt. I also agree that the trial court erred in determining the award of maintenance before fully dividing the parties' marital and separate property. And I agree with the majority's analysis of the trial and appellate attorney fees issues.

However, I do not agree with the majority's interpretation of what should be considered "financial resources," given the common

usage of this term. And to the extent the majority found no reported case addressing this issue, this fact does not weigh in favor of the majority or the dissent.

When determining the amount and duration of a maintenance award that the court deems just, Ch. 151, sec. 1, § 14–10–114(4), 2001 Colo. Sess. Laws 484, requires a district court to consider all relevant factors. These factors include "[t]he financial resources" of the spouse seeking maintenance and that spouse's ability to meet his or her needs independently. § 14–10–114(4)(a), 2001 Colo. Sess. Laws at 484.

We read a statute's words and phrases in context and construe them according to their common usage. § 2–4–101, C.R.S.2015. "[I]t is not the role of the courts to rewrite or eliminate clear and unambiguous statutes merely because they do not believe the General Assembly would have intended the consequences of its enactments." *People v. Cooper*, 27 P.3d 348, 360 (Colo.2001) (Coats, J., dissenting).

The term "financial resources" is not defined in the statute, so it is proper for us to consult definitions in recognized dictionaries to determine the ordinary meaning of this term words. *See Griego v. People*, 19 P.3d 1, 9 (Colo.2001). One such dictionary provides three definitions that inform our decision. "Financial" is defined as "relating to finance," and "finances" are defined as "the pecuniary affairs or resources of a state, company, or individual." *Webster's Third New International Dictionary Unabridged* 851 (2002). In addition, "resources" are defined as "immediate and possible sources of revenue," "something to which one has recourse in difficulty," and "means of resort in exigency." *Id.* at 1934. Reading the term "financial resources" in its statutory context, its common meaning is: in the pecuniary affairs of the spouse seeking maintenance, those possible sources of revenue to which that spouse has recourse and to which he or she may resort to meet his or her needs

independently. Student loans are one such possible source of revenue to wife.

Indeed, wife states in her opening brief that "[student] loans were incurred during the marriage that provided both a subsidy for living expenses and [her] school expenses." It is undisputed that during the marriage, the parties jointly used portions of student loans as sources of revenue for living expenses. So, under these circumstances, the court did not abuse its discretion when it considered wife's receipt of $33,000 in student loans a part of her financial resources.

The trial court considered wife's student loans "income for [w]ife to live off of." The court's analysis in arriving at its maintenance award appears to have been focused primarily on the income or income-like nature of those loans and wife's ability to use them to meet her needs. While the student loans might help wife pay for some of her living expenses, I agree with the majority that the loans are nevertheless generally a debt wife will most likely have to repay. When considering the loans as a "financial resource" for maintenance purposes, the court should also have considered the liability created by the loans.[1] *Cf. In re Marriage of Hill*, 166 P.3d 269, 272 (Colo.App.2007) (noting that the parties' "financial resources" for purposes of attorney fees include their incomes, assets, and liabilities).

I reject wife's related assertion that the sonogram school loans were not going to be used to pay for living expenses and should therefore not be considered in deciding her maintenance request. Wife testified that her loans were historically used to pay for both school expenses and living expenses. The court had discretion to infer from this evidence that wife would likewise use the sonogram loans for those purposes. *See In re Marriage of Foottit*, 903 P.2d 1209, 1213 (Colo.App.1995) (stating that inferences and conclusions to be drawn from the evidence are matters within the district court's sole discretion).

1. I note that the new maintenance statute specifically distinguishes a party's "income" from his or her "financial resources," supporting a conclusion that a party's "financial resources" includes more than just income or income-like property. *See* § 14–10–114(3)(a)(I)(A), (C), C.R.S.2015.

The majority concludes that construing "financial resources" as I do poses the potential for "serious injustice" because courts would be permitted to consider a party's potential ability to obtain any type of loan as a financial resource.[2]  But I would not adopt such a broad rule and, therefore, I only address the student loans actually obtained in this case. Rather than looking at a party's ability to obtain all types of loans, courts may consider whether the party obtained student loans, as the court did here.  I would consider student loans a financial resource when a party has actually obtained the loans and used a portion of the loans for living expenses, thus lowering the party's reasonable needs. § 14–10–114(3)(a)(I)(D), C.R.S.2015.  When a party, as here, previously used student loans to subsidize living expenses, courts may consider student loans obtained by a party a financial resource when they find that the loans are covering living expenses.  Thus, my interpretation would not result in a serious injustice as applied.

Accordingly, I respectfully concur in part and dissent in part.

---

**2.** I do not address the majority's "parade of horribles" that might lead to "serious injustice" because the issue of credit worthiness for other types of loans and circumstances surrounding those potential loans are not before us.  *See Taxpayers for Pub. Educ. v. Douglas Cty. Sch. Dist.,* 2015 CO 50, ¶ 29 n. 15, 351 P.3d 461.