The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 26, 2019

**2019COA149**

**No. 2018CA1209 *In re the Marriage of Zander* — Family Law — Uniform Dissolution of Marriage Act — Disposition of Property — Uniform Premarital And Marital Agreements Act — Colorado Marital Agreement Act**

In this appeal concerning the division of property entered in connection with a dissolution of marriage, the division considers the conflict between the Colorado Marital Agreement Act (CMAA) and the Uniform Dissolution of Marriage Act (UDMA) in the disposition of marital property.

Though section 14-10-113(2)(d), C.R.S. 2019, of the UDMA provides that property acquired during marriage is marital property unless excluded by "valid agreement" of the parties, the CMAA states that marital agreements must be in writing and signed by both parties.  The division holds the two provisions can be

harmonized by concluding the more specific CMAA provision governs.

Accordingly, the division reverses the district court's judgment dividing the parties' marital property and remands the case to allow the court to redetermine an equitable property division.

COLORADO COURT OF APPEALS                                    **2019COA149**

Court of Appeals No. 18CA1209
Grand County District Court No. 16DR30001
Honorable Mary C. Hoak, Judge

In re the Marriage of

Denise Zander,

Appellee,

and

John Zander,

Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Hawthorne and Grove, JJ., concur

Announced September 26, 2019

Anthony J. DiCola, Heather A. Stein, Hot Sulphur Springs, Colorado, for
Appellee

Leigh A. Rosser, Edwards, Colorado, for Appellant

¶ 1    John Zander (husband) appeals the property division entered in connection with the dissolution of his marriage to Denise Zander (wife). We reverse and remand for additional proceedings.

## I.  Background

¶ 2    In 2018, the district court dissolved the parties' seventeen-year marriage and divided the marital estate equally. In doing so, the court determined that an oral agreement entered into by the parties during the marriage was valid and enforceable. The court also awarded wife monthly spousal maintenance of $1 until further court order.

¶ 3    The district court denied husband's C.R.C.P. 59 motion, and this appeal followed.

## II.  Husband's Appeal of the Property Division is Not Barred

¶ 4    To begin, we address wife's argument, as we understand it, that husband's appeal of the property division is barred because he failed to appeal the maintenance award and used marital funds during the dissolution proceeding to pay certain marital debts. We disagree.

¶ 5    Wife asks us to follow the general rule that a party who accepts the benefits of a judgment may not seek reversal of that

1

judgment on appeal. *In re Marriage of Jones*, 627 P.2d 248, 251 (Colo. 1981); *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1246 (Colo. App. 2001) (Ordinarily, a party's right to appeal a judgment is waived by the party's acceptance of the benefits of that judgment "when the appeal may result in a determination that the party is not entitled to what has been accepted."). However, that rule is not strictly applied in dissolution of marriage cases, and it does not apply here. *See In re Marriage of Powell*, 220 P.3d 952, 954 (Colo. App. 2009); *In re Marriage of Burford*, 950 P.2d 682, 684 (Colo. App. 1997). Husband's acceptance of the maintenance award and his use of marital funds during the dissolution action are not inconsistent with the basis of his appeal and do not deprive him of his right to seek review of the court's property division. *See Powell*, 220 P.3d at 954; *see also In re Marriage of Antuna*, 8 P.3d 589, 592 (Colo. App. 2000) (husband's acceptance of a court-ordered payment did not constitute a waiver of his right to appeal); *In re Marriage of Lee*, 781 P.2d 102, 105 (Colo. App. 1989) (wife's acceptance of maintenance payments did not waive her right to appeal because public policy prohibits requiring a former spouse to choose between the necessities of life and the right to appeal).

### III. The Parties' Oral Marital Agreement is Unenforceable

¶ 6    Husband contends that the district court erred in finding that the alleged oral marital agreement was valid and enforceable. We agree.

¶ 7    The record reflects that the parties entered the marriage with separate retirement accounts and received inheritances from their parents during the marriage. Wife testified that in 2007 the parties orally agreed to keep their retirement accounts and inheritances as their separate property.[1] Also in 2007, the parties executed a revocable living trust, which was amended to exclude their retirement accounts. Wife offered, and the district court admitted, Exhibit 41, a 2014 email from husband to his adult son from a prior marriage, arguably supporting the validity of the alleged oral agreement:

---

[1] Nevertheless, under section 14-10-113(4), C.R.S. 2019, the value of retirement accounts and inheritances at the time of the marriage is considered separate property. Because the increased value of retirement accounts and inheritances is considered marital property, a written agreement would be required, as discussed below, to have that marital property be considered as separate property.

- "I am setting up an investment account with Ameriprise with money from grandma's estate.  You are the sole beneficiary."

- "My [individual retirement account] is down $160,000.  You and [your sister] are the 50-50 beneficiaries.  She will probably let the full amount go to you.  That is her decision."

¶ 8    For his part, husband denied having made any such agreement.[2]

¶ 9    The district court, in a thoughtful and detailed written order, sided with wife.  Relying on section 14-10-113(2)(d), C.R.S. 2019, basic contract principles, and an adverse credibility finding against husband, the court determined that wife had established a valid oral agreement to exclude the parties' respective retirement accounts and inheritances from the marital estate.  The court reasoned that husband's conduct after the alleged agreement corroborated its existence:

---

[2] Wife does not argue that husband was estopped from disavowing the oral agreement.

> [Husband] denies that the parties made the
> agreement to keep their inheritances and
> retirement accounts their separate property
> even though he testified that he wants the
> remainder of his IRA as his separate property
> when it contains marital property.  Further,
> Exhibit 41 . . . supports the validity of the
> parties' agreement as does the fact that the
> parties never placed their retirement accounts
> or the proceeds from their pensions into their
> trust, which was their estate planning vehicle.

¶ 10     Husband does not dispute that an oral agreement may be valid under general contract principles.  Rather, he argues that the enactment of the Colorado Marital Agreement Act (CMAA) in 1986 displaced common law contract principles permitting parties to enter into marital agreements by means other than those prescribed in the CMAA.  *See In re Marriage of Ikeler*, 161 P.3d 663, 667 (Colo. 2007); *see also* § 14-2-310(1), C.R.S. 2007.  Put simply, he asserts that only written and signed marital agreements are valid and enforceable.

¶ 11     Our analysis requires us to interpret the CMAA, the law applicable at the time the purported agreement was made, and the Uniform Dissolution of Marriage Act (UDMA).  *See* § 14-2-303(1), C.R.S. 2019 (the current version of the Uniform Premarital and Marital Agreements Act (UPMAA), sections 14-2-301 to -313, C.R.S.

2019, applies only to agreements signed on or after July 1, 2014); Ch. 239, sec. 1, § 14-2-301, 2013 Colo. Sess. Laws 1159 (CMAA repealed and reenacted as the UPMAA). The interpretation of statutes is an issue of law that we review de novo. *See Ikeler*, 161 P.3d at 666.

¶ 12    Our primary goal in statutory interpretation is to find and give effect to legislative intent. *In re Marriage of Joel*, 2012 COA 128, ¶ 18, 404 P.3d 1251, 1254. To ascertain the legislative intent, we look first to the language of the statute, giving words and phrases their plain and ordinary meanings. *See* § 2-4-101, C.R.S. 2019; *Joel*, ¶ 18. If the language is clear and unambiguous on its face, we apply the statute as written. *In re Marriage of Schmedeman*, 190 P.3d 788, 790 (Colo. App. 2008).

¶ 13    But if one statute conflicts with another, we should, if possible, adopt a construction that harmonizes these provisions rather than creates an inconsistency or conflict in the statutory scheme. *In re Marriage of Bisque*, 31 P.3d 175, 178 (Colo. App. 2001) (resolving conflict between the UDMA and the CMAA). If statutes addressing the same subject cannot be harmonized, we ordinarily favor a specific statute over a general one as it is a clearer

indication of the General Assembly's intent in a specific area. *See*

*Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue*, 40 P.3d 1260,

1265 (Colo. 2002); *In re Marriage of Rozzi*, 190 P.3d 815, 819 (Colo.

App. 2008); *see also* § 2-4-205, C.R.S. 2019 (a special provision

prevails as an exception to a general provision, unless the general

provision was later adopted and expresses a manifest intent that it

prevails). Also, if statutes irreconcilably conflict, the statute with

the later effective date prevails. § 2-4-206, C.R.S. 2019.

¶ 14    The UDMA, enacted in 1971, creates a statutory presumption

that property acquired during the marriage is marital property. *See*

§ 14-10-113(3); *see also Michaelson v. Michaelson*, 884 P.2d 695,

697 n.2 (Colo. 1994). That presumption, however, may be

overcome by establishing that the property was acquired by one of

the methods listed in section 14-10-113(2). One such method is

that the property acquired during the marriage was excluded "by

valid agreement of the parties." § 14-10-113(2)(d). Nowhere in the

UDMA is the phrase "valid agreement" specifically defined.

¶ 15    In contrast, section 14-2-302(1), C.R.S. 2007, of the CMAA

defines marital agreement as "an agreement . . . between present

spouses, but only if signed by both parties prior to the filing of an

7

action for dissolution of marriage or for legal separation." *See In re Marriage of Goldin*, 923 P.2d 376, 380 (Colo. App. 1996) (agreement written in longhand by the wife met the statutory definition of "marital agreement"). According to the CMAA, the requisite formalities are that marital agreements "be in writing and signed by both parties." § 14-2-303, C.R.S. 2007. "A marital agreement becomes effective upon marriage, if signed by both parties prior to marriage, or upon the signatures of both parties, if signed after marriage." § 14-2-305, C.R.S. 2007. And after the agreement becomes effective, it can only be amended or revoked "by a written agreement signed by both parties." § 14-2-306, C.R.S. 2007.

¶ 16    Looking at the relationship between section 14-10-113(2)(d) of the UDMA and sections 14-2-302(1), 14-2-303, and 14-2-305, C.R.S. 2007, of the CMAA, we conclude that the statutory provisions can be harmonized. *See Telluride Resort & Spa*, 40 P.3d at 1265. Thus, a "valid agreement" of the parties to exclude as marital property certain property acquired during the marriage must be a written agreement signed by both parties. To conclude otherwise would mean that spouses in a dissolution of marriage proceeding could always exclude certain marital property, even if

they did not have a written agreement. Such a conclusion would be inconsistent with the language contained in section 14-2-302(1), C.R.S. 2007. As a result, the district court erred in not following the plain language of the CMAA and instead broadly construing "valid agreement" in section 14-10-113(2)(d) to include an oral marital agreement.

¶ 17 Our survey of the UDMA leads us to believe that when the General Assembly intends to require a written agreement, it expressly says so. *See In re Marriage of Paige*, 2012 COA 83, ¶ 12, 282 P.3d 506, 508; *see also* § 14-10-112(1), C.R.S. 2019 ("[P]arties may enter into a written separation agreement."); § 14-10-113(6)(c)(I), (II) (Parties may enter into a UPMAA marital agreement or a separation agreement "concerning the division of a public employee retirement benefit . . . pursuant to a written agreement."); § 14-10-114(7)(a), C.R.S. 2019 ("[P]arties may agree in writing or orally in court to waive maintenance" and "may also agree to waive maintenance in a premarital agreement or marital agreement consistent" with the UPMAA.); § 14-10-115(13)(a)(I), C.R.S. 2019 (For child support orders entered on or after July 1, 1997, a child becomes emancipated at the age of the nineteen unless "[t]he

parties agree otherwise in a written stipulation."); § 14-10-122(2)(a), C.R.S. 2019 ("Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the earlier of [four listed events.]").

¶ 18 Although the General Assembly did not require in section 14-10-113(2)(d) that a "valid agreement" be in writing, it expressly provided that marital agreements under section 14-2-302(1), C.R.S. 2007, be in writing and signed by both parties. Thus, as discussed above, section 14-2-302(1), C.R.S. 2007, must be given effect by requiring that all marital agreements must be in writing and signed by both parties.

¶ 19 In the alternative, if we were to conclude that the statutes cannot be harmonized, we would reach the same result because the CMAA statute is more specific and more recent. *See* §§ 2-4-205, 206.

¶ 20 Nor are we persuaded by the district court's reliance on *In re Marriage of Lemoine-Hofmann*, 827 P.2d 587 (Colo. App. 1992). That reliance, although understandable, was misplaced. In *Lemoine-Hofmann*, in 1984, before the parties married, they had orally agreed to take turns putting each other through college. *See*

*id.* at 588. After they wed, but before their separation, the parties entered into a written separation agreement, which memorialized the prior oral agreement. *See id.* After husband obtained his college degree, he requested a divorce. *See id.*

¶ 21 Applying general contract principles, the division upheld the district court's finding that the parties' oral agreement, later recognized in their separation agreement, was valid and enforceable. *See id.* at 589-90. The division considered significant the undisputed testimony that the parties intended to put each other through college regardless of their marital status. *See id.* at 589. Also, the division dismissed the husband's argument that the oral agreement was void as contrary to the statute of frauds. *See id.* at 590. The division stated that it was undisputed that "the obligations at issue were not made upon consideration of the parties' marriage" and that the husband conceded that the wife had partially performed the agreement by putting him through college. *See id.*

¶ 22 We observe that the 1984 agreement in *Lemoine-Hofmann* arose prior to the effective date of the CMAA. *See Ikeler*, 161 P.3d at 667; *see also* § 14-2-310(1), C.R.S. 2007. We further observe

that the oral agreement in *Lemoine-Hofmann* does not appear to have been a marital agreement at all as it was not made in contemplation of marriage. *See Lemoine-Hofmann*, 827 P.2d at 589-90.

¶ 23    In contrast, the circumstances here are substantially similar to those in a case decided eleven years later, *In re Marriage of Lafaye*, 89 P.3d 455 (Colo. App. 2003). There, the wife sought to enforce the husband's oral promises that he would transfer oil and gas interests to her and contribute to her son's medical school education. *See id.* at 460. In distinguishing *Lemoine-Hofmann*, the division held that the alleged oral promises were not enforceable:

> [T]he court [in *Lemoine-Hoffman*] did not consider application of the [CMAA], and, unlike here, the fact that an oral agreement had been made and the circumstances of the agreement were not disputed. Further, the court found in that case that the oral agreement was binding based on part performance. No such finding was made here with respect to the oil and gas interests.

*Id.* We perceive no reason to depart from the holding in that case.

¶ 24    We also disagree with the district court's determination that the parties' conduct after entering into the alleged agreement

should be considered partial performance satisfying the writing requirement under the CMAA.

¶ 25 Under section 38-10-112(1)(c), C.R.S. 2019, an "agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry," are void absent a writing. One exception to the writing requirement under section 38-10-112(1)(c) is partial performance. *See Lemoine-Hofmann*, 827 P.2d at 590. However, we have concluded that the more specific and more recent CMAA governs, and it clearly and unambiguously requires a marital agreement to be in writing.

¶ 26 The district court's reliance on *Lemoine-Hofmann* does not support its conclusion. As stated previously, the oral agreement in *Lemoine-Hofmann* was not a marital agreement and was entered into before the CMAA was enacted. *See id.* at 589-90. Importantly, the division there upheld the parties' oral agreement determining that partial performance overcame the requirements of section 38-10-112(1)(c); it did not say, however, that the partial performance doctrine excused the writing requirement in the CMAA. *See Lemoine-Hofmann*, 827 P.2d at 590. We may presume that the General Assembly was aware of that case when the CMAA was

13

enacted. *See Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo. 1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."); *U.S. Fid. & Guar., Inc. v. Kourlis*, 868 P.2d 1158, 1162-63 (Colo. App. 1994). We see nothing in the language of the CMAA and have found no authority to indicate that the General Assembly intended to incorporate such an exception.

¶ 27 Wife summarily states that "[e]ven if the [district] court was wrong in determining the validity of the oral agreement, the testimony [about an oral agreement] was parol evidence of the parties['] intent to show what went on with the retirement accounts that were in and then out of the trust." Because she does not support this argument with legal authority or any meaningful legal analysis, we will not address it. *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development.").

¶ 28 Given our disposition, we need not address husband's argument that the oral marital agreement was not enforceable because the parties did not adequately disclose their finances prior

to its execution.  *See* § 14-2-307(1)(b), C.R.S. 2007; *Bisque*, 31 P.3d at 178.

¶ 29    In sum, we conclude that the more specific CMAA provision requiring a marital agreement to be in writing prevails over the general UDMA provision at section 14-10-113(2)(d).  Thus, the district court erred in construing "valid agreement" in section 14-10-113(2)(d) to include an oral marital agreement.  Contrary to the court's determination, the alleged oral agreement here is not valid and enforceable because it does not meet the statutory requirements under the CMAA.  *See* §§ 14-2-302(1), 14-2-303, 14-2-305, C.R.S. 2007.  Accordingly, we reverse this portion of the permanent orders, and on remand the district court is instructed to determine what, if any, portion of the parties' retirement accounts and inheritances are marital property under section 14-10-113(1).

## IV.  Property Division

¶ 30    Considering that our disposition may significantly change the marital estate, we must reverse and remand the entire property division for reconsideration.  *See In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001) (errors by the court in dividing property are reversible when the aggregate effect of such errors affects the

parties' substantial rights); *see also In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo. App. 2003) (an error affecting a large percentage of the marital estate requires remand to the district court to correct such error). The court must also consider the parties' economic circumstances at the time of the remand. *See In re Marriage of Morton*, 2016 COA 1, ¶ 14, 369 P.3d 800, 801; *see also In re Marriage of Wells*, 850 P.2d 694, 697-98 (Colo. 1993). In so doing, the court, in exercising its discretion, may also consider husband's apparent adherence to the marital and oral agreement until the permanent orders hearing. *See In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (district court has broad discretion in dividing marital property; the division must be equitable but need not be mathematically equal).

V. Conclusion

¶ 31 We reverse the district court's judgment, and the case is remanded for the district court to determine what part, if any, of the parties' retirement accounts and inheritances are marital property and redetermine an equitable property division.

JUDGE HAWTHORNE and JUDGE GROVE concur.